708 So.2d 918 (1998)
Thomas W. FREY, Petitioner,
v.
STATE of Florida, Respondent.
No. 88924.
Supreme Court of Florida.
March 5, 1998.
James Marion Moorman, Public Defender, and John C. Fisher, Assistant Public Defender, Tenth Judicial Circuit, Bartow, for Petitioner.
Robert A. Butterworth, Attorney General, and Ann Pfeiffer Corcoran, Assistant Attorney General, Tampa, for Respondent.
SHAW, Justice.
We have for review Frey v. State, 679 So.2d 37 (Fla. 2d DCA 1996), wherein the court certified:
Is the offense of resisting arrest with violence a specific intent crime to which the defense of voluntary intoxication applies?
Id. at 38. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the negative and approve Frey.
Deputy Britt was on uniformed patrol at 11:30 p.m., April 20, 1994, when he saw Thomas Frey acting suspiciously near Earl's Trailer Park. Britt asked Frey for identification, and when a radio check showed an outstanding arrest warrant, Britt attempted *919 to handcuff him. Frey, who was very drunk (his blood alcohol level was .388, or approximately four times the legal limit for driving), said, "I'm not going to jail," and grabbed Britt's throat with both hands, choking him. Britt tried to break free but could not. The deputy kicked and punched Frey, and in a final attempt to free himself, shot Frey in the legs. Both Britt and Frey were treated at the hospital for their injuries.
Frey was charged with aggravated battery on a law enforcement officer and resisting arrest with violence. He was tried before a jury and in closing argument defense counsel argued that Frey had been too drunk to form the specific intent to commit the crimes. The prosecutor, on the other hand, told the jury that while voluntary intoxication is a defense to aggravated battery, it is not a defense to resisting arrest with violence. The judge in his instructions to the jury echoed the prosecutor's statement of the law. Frey was convicted of battery and resisting arrest with violence. The district court affirmed and certified the above question.
Frey argues that resisting arrest with violence is a specific intent crime and that his requested instruction on voluntary intoxication should have been given on this charge. He asserts that the trial court erred not only in denying the instruction but also in instructing the jury that voluntary intoxication is not a defense to resisting arrest with violence. We disagree.
Voluntary intoxication has long been recognized in Florida as a defense to specific intent crimes, as this Court noted in Linehan v. State, 476 So.2d 1262 (Fla.1985):
[W]e note that this Court has long recognized voluntary intoxication as a defense to specific intent crimes. Cirack v. State, 201 So.2d 706 (Fla.1967); Garner v. State, 28 Fla. 113, 9 So. 835 (1891). In Garner we stated that when
a specific or particular intent is an essential or constituent element of the offense, intoxication, though voluntary, becomes a matter for consideration ... with reference to the capacity or ability of the accused to form or entertain the particular intent, or ... whether the accused was in such a condition of mind as to form a premeditated design. Where a party is too drunk to entertain or be capable of forming the essential particular intent, such intent can of course not exist, and no offense of which such intent is a necessary ingredient, [can] be perpetrated.
28 Fla. at 153-54, 9 So. at 845.
Linehan, 476 So.2d at 1264. The defense, however, is unavailable for general intent crimes. Id.
Professor LaFave describes the general contours of specific intent, as opposed to general intent, crimes:
[T]he most common usage of "specific intent" is to designate a special mental element which is required above and beyond any mental state required with respect to the actus reus of the crime. Common law larceny, for example, requires the taking and carrying away of the property of another, and the defendant's mental state as to this act must be established, but in addition it must be shown that there was an "intent to steal" the property. Similarly, common law burglary requires a breaking and entry into the dwelling of another, but in addition to the mental state connected with these acts it must also be established that the defendant acted "with intent to commit a felony therein." The same situation prevails with many statutory crimes: assault "with intent to kill" as to certain aggravated assaults; confining another "for the purpose of ransom or reward" in kidnapping; making an untrue statement "designedly, with intent to defraud" in the crime of false pretenses; etc.
1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 3.5(e)(1986)(footnotes omitted).
To determine whether resisting arrest with violence is a general intent or specific intent crime, we look to the plain language of the statute:
843.01 Resisting officer with violence to his person.Whoever knowingly and willfully resists, obstructs, or opposes any officer ... in the lawful execution of any legal duty, by offering or doing violence to *920 the person of such officer ... is guilty of a felony of the third degree....
§ 843.01, Fla. Stat. (1993).
The statute's plain language reveals that no heightened or particularized, i.e., no specific, intent is required for the commission of this crime, only a general intent to "knowingly and willfully" impede an officer in the performance of his or her duties. In fact, the statute is similar in format to the statute defining arson, which we held to be a general intent crime.[1] Only if the present statute were to be recast to require a heightened or particularized intent would the crime of resisting arrest with violence be a specific intent crime.[2] Our holding is in harmony with our precedent.[3]
Based on the foregoing, we answer the certified question in the negative and approve the result in Frey as explained herein.
It is so ordered.
OVERTON and WELLS, JJ., concur.
HARDING, J., concurs with an opinion.
GRIMES, Senior Justice, concurs with an opinion.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which KOGAN, C.J., concurs.
HARDING, Justice, concurring:
In his concurrence, Justice Anstead raises some important concerns regarding the distinction between specific and general intent crimes. I agree with Justice Anstead that this is a very confusing area of the law. See Linehan v. State, 442 So.2d 244, 246 (Fla. 2d DCA 1983) ("The distinction between `specific' and `general' intent crimes is nebulous and extremely difficult to define and apply with consistency.") approved, 476 So.2d 1262 (Fla. 1985). However, this is not the right case to consider abolishing the distinction between specific and general intent crimes. The district court below did not address the possibility of doing away with the distinction and the parties have not had a chance to brief this issue.
If this Court were to ever consider eliminating the distinction between specific and general intent crimes, it should also consider abolishing the defense of voluntary intoxication, except as it applies to first-degree premeditated murder. Voluntary intoxication is not a statutory defense. See Linehan, 442 So.2d at 253. In fact, voluntary intoxication was not even recognized by the English common law, and did not develop in the United States until the nineteenth century. See Montana v. Egelhoff, 518 U.S. 37, 44-50, 116 S.Ct. 2013, 2018-20, 135 L.Ed.2d 361 (1996); see also Linehan, 442 So.2d at 252-53. In recent years, a number of states have abandoned the voluntary intoxication defense. See concurring and dissenting op. at 923 n. 16 (Anstead, J., concurring in part and dissenting in part) (citing John Gilbeaut, Sobering Thoughts, 83 A.B.A.J. 56, 58-59 (May 1997)). In Montana v. Egelhoff, 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), the United States Supreme Court determined that a state may abolish the voluntary intoxication defense and that doing so does not violate due process.
GRIMES, Senior Justice, concurring.
There is much to be said for doing away with the distinction between specific and general intent crimes. I also believe that at *921 some point, either this Court or the legislature might wish to consider eliminating the defense of voluntary intoxication. However, neither of these propositions has been argued in this case, and I concur that the precedent of our Court dictates that resisting arrest without violence is a general intent crime.
ANSTEAD, Justice, concurring in part and dissenting in part.
This case presents an ideal opportunity for this Court to act on Justice Shaw's cogent observation that "the nebulous distinction between general and specific intent crimes and the defense of voluntary intoxication bear reexamination in a suitable case." Chestnut v. State, 538 So.2d 820, 825 (Fla.1989) (Shaw, J., specially concurring) (citing Linehan v. State, 476 So.2d 1262, 1266 (Fla.1985) (Shaw, J., dissenting)). In my view, this is that "suitable case."
I believe that the artificial distinction we have established between general and specific intent, with only specific intent crimes warranting additional defenses such as voluntary intoxication, often leads to incongruous and harsh results. Countless commentators and courts have criticized the lack of a principled and useful basis for maintaining this distinction. As one commentator has noted:
These arcane rules, which relieve the State of its obligation to prove mens rea in cases in which the charged offense is characterized as one requiring only general intent, thereby creating a form of strict liability, are illogical. They remove from the criminal proceedings precisely that inquiry which is central to the construction of individual responsibilitythe question of whether the defendant was capable of engaging in a process of practical reasoning.
Richard C. Boldt, The Construction of Responsibility in the Criminal Law, 140 U. Pa. L.Rev. 2245, 2307 n. 240 (1992). Another observer similarly finds the terms confusing and of little value:
Since the terms do not clearly delineate for the jury (or anyone else) what blameworthy state of mind must exist in any given situation, it would seem senseless to instruct a jury in these amorphous terms. It would be much better to tell the jury that, for guilt, a defendant must have thought about (or have been reckless concerning) certain definite things. If he did, and also performed the requisite acts, he is to be found guilty. If he did not so contemplate and act, he is to be acquitted.
William Roth, General vs. Specific Intent: A Time for Terminological Understanding in California, 7 Pepp. L.Rev. 67, 77-78 (1979).
Consider how Florida courts, including this one, have treated the issue now before us. This Court and the district courts have previously held that resisting arrest with violence is a specific intent crime. See Colson v. State, 73 So.2d 862, 862 (Fla.1954) (appellant asserted "he was so drunk at the time he did not know what he was doing and, being so, the necessary element of `knowingly and willfully' resisting the sheriff in the performance of his duty was not present."); Miller v. State, 636 So.2d 144, 151 (Fla. 1st DCA 1994) ("Like battery on a law enforcement officer, resisting arrest with violence is a specific intent crime."); Gonzales v. State, 488 So.2d 610, 610 (Fla. 4th DCA 1986) ("[R]esisting arrest with violence is a specific intent crime."). In essence, we have held that voluntary intoxication may be a defense to resisting arrest with violence. Colson, 73 So.2d at 862 ("Whether or not defendant had enough left to know what he was doing was a question for the jury."). See also Brown v. State, 614 So.2d 12, 12 (Fla. 1st DCA 1993) ("We reverse appellant's convictions and sentences for battery on a law enforcement officer and resisting arrest with violence, because the trial court improperly restricted voir dire of jury venire relating to the defendant's anticipated voluntary intoxication defense."). In the present case, the Second District noted it would have followed Gonzales and Colson but felt compelled to affirm the conviction based on language in Linehan. Frey v. State, 679 So.2d 37, 38 (Fla. 2d DCA 1996). The court aptly noted that "[t]he supreme court has never receded from" Colson. Id. at 38. Does all this sound confusing?
Since this perplexing division between "general" and "specific" is judicially created, we should seriously consider whether now is the time to revise this ill-conceived framework.[4] *922 Rather than splitting hairs and attempting to draw a bright line through the murky and ill-defined netherworld that separates general from specific intent, our time would be better spent giving effect to the legislative intent behind a particular statute and focusing on the degree of culpability along the lines clearly delineated in the Model Penal Code.[5] Other than the "nebulous distinction" separating general from specific intent crimes, no compelling policy reasons exist which support the availability of additional defenses in Florida to "specific" intent crimes such as first-degree murder,[6] robbery,[7] kidnapping,[8] aggravated assault,[9] battery,[10] aggravated battery,[11] burglary,[12] *923 escape,[13] and theft,[14] while denying the application of such defenses to "general" intent crimes such as resisting a police officer with violence or arson.[15] The only difference I can see is that, for the most part, the statutes defining the former category have the magic words "with intent to," while the latter crimes do not.[16]

"GENERAL" vs. "SPECIFIC"
In State v. Stasio, 78 N.J. 467, 396 A.2d 1129 (1979), the New Jersey Supreme Court grappled with the distinction between specific and general intent. Quoting Professor Hall's treatise, the court reasoned:
The current confusion resulting from diverse uses of "general intent" is aggravated by dubious efforts to differentiate that from "specific intent." Each crime ... has its distinctive mens rea, e.g., intending to have forced intercourse, intending to break and enter a dwelling-house and to commit a crime there, intending to inflict a battery, and so on. It is evident that there must be as many mentes reae as there are crimes. And whatever else may be said about an intention, an essential characteristic of it is that it is directed toward a definite end. To assert therefore that an intention is "specific" is to employ a superfluous term just as if one were to speak of a "voluntary act."
Id. at 1132-33 (quoting Jerome Hall, General Principles of Criminal Law 142 (2d ed.1960)). The New Jersey high court went on to explain that:
[D]istinguishing between specific and general intent gives rise to incongruous results by irrationally allowing intoxication to excuse some crimes but not others. In some instances if the defendant is found incapable of formulating the specific intent necessary for the crime charged, such as assault with intent to rob, he may be convicted of a lesser included general intent crime, such as assault with a deadly weapon. In other cases there may be no related general intent offense so that intoxication would lead to acquittal....
... [W]here the more serious offense requires only a general intent, such as rape, intoxication provides no defense, whereas it would be a defense to an attempt to rape, specific intent being an element of that offense. Yet the same logic and reasoning which impels exculpation due to the failure of specific intent to commit an offense would equally compel the same result when a general intent is an element of the offense.
Stasio, 396 A.2d at 1133-34 (citations omitted).[17] Like the New Jersey Supreme Court, *924 other courts have been equally critical of the nebulous distinction between specific and general intent. The California Supreme Court has stated that "[t]oo often the characterization of a particular crime as one of specific or general intent is determined solely by the presence or absence of words describing psychological phenomena'intent' or `malice' for examplein the statutory language of defining the crime." People v. Hood, 1 Cal.3d 444, 82 Cal.Rptr. 618, 462 P.2d 370, 377-78 (1969).
Even the United States Supreme Court has recognized that "the mental element in criminal law encompasses more than the two possibilities of `specific' and `general' intent." See Liparota v. United States, 471 U.S. 419, 423 n. 5, 105 S.Ct. 2084, 2087 n. 5, 85 L.Ed.2d 434 (1985). Indeed, the Court has explained that:
This ambiguity [in the terms specific intent and general intent] has led to a movement away from the traditional dichotomy of intent and toward an alternative analysis of mens rea. This new approach [is] exemplified by the American Law Institute's Model Penal Code....
....
... [T]here is [an] ambiguity inherent in the traditional distinction between specific intent and general intent. Generally, even time-honored common-law crimes consist of several elements, and complex statutorily defined crimes exhibit this characteristic to an even greater degree. Is the same state of mind required of the actor for each element of the crime, or may some elements require one state of mind and some another? ... "[C]lear analysis requires that the question of the kind of culpability required to establish the commission of an offense be faced separately with respect to each material element of the crime."
United States v. Bailey, 444 U.S. 394, 403-06, 100 S.Ct. 624, 631-33, 62 L.Ed.2d 575 (1980) (quoting Model Penal Code § 2.02 comments at 123 (Tentative Draft No. 4, 1955)).
Consistent with the views expressed above, Professors LaFave and Scott suggest an alternative method for evaluating the effect of voluntary intoxication on a defendant's ability to exhibit the requisite mens rea of a particular crime:
[I]t may be said that it is better, when considering the effect of the defendant's voluntary intoxication upon his criminal liability, to stay away from those misleading concepts of general intent and specific intent. Instead one should ask, first, what intent (or knowledge) if any does the crime in question require; and, then, if the crime requires some intent (knowledge), did the defendant in fact entertain such an intent (or, did he in fact know what the crime requires him to know.)
1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 4.10 at 554 (1986).[18]
*925 In a sense we are already moving in this direction. For example, we recently held that the State was required to prove that the defendant knowingly possessed illegal drugs even though the applicable statute did not specifically include a scienter requirement. Chicone v. State, 684 So.2d 736, 744 (Fla. 1996). We reasoned that "if the legislature had intended to make criminals out of people who were wholly ignorant of the offending characteristics of items in their possession, and subject them to lengthy prison terms, it would have spoken more clearly to that effect." Id. at 743. Accordingly, we concluded that it was the legislature's intent "to prohibit the knowing possession of illicit items and to prevent persons from doing so by attaching a substantial criminal penalty to such conduct." Id. at 744. In the end, we found that "[s]ilence does not suggest that the legislature dispensed with scienter here." Id. We have also recently decided in Thompson v. State, 695 So.2d 691 (Fla.1997), that a defendant must be aware that his intended victim is a police officer, before he can be convicted of attempted murder of a police officer.

THIS CASE
The extreme facts of this case underscore the faulty rationale, if any, for maintaining the irrational division of criminal intent between "general" and "specific." As the majority opinion notes, Mr. Frey had a blood alcohol level of 0.388, approximately four times the legal limit for driving. Majority op. at 918-19. The arresting officer, Deputy Britt, testified that he believed Frey was drunk because he swayed, smelled of alcohol, babbled, could not stand still, and spoke in a loud, slurred and unintelligible voice. An emergency room physician testified that when persons have such a high level of alcohol in their systems, they may suffer blackouts, thus meaning they can do something and not remember it later. Finally, the trial judge commented that he had only seen one person with a higher blood alcohol content than Frey's in three to four years. He noted that emergency medical personnel usually take such severely intoxicated people directly to the hospital since normally "you're going to die on them. And I'm worried about that." By any measure, Mr. Frey was severely intoxicated and a serious question exists as to his capability of forming an intent, general or specific, to commit the crime at issue.
Against this factual backdrop, let us consider the criminal offense involved herein. Section 843.01, Florida Statutes (1993), provides:
Whoever knowingly and willfully resists, obstructs, or opposes any officer ... in the lawful execution of any legal duty, by offering or doing violence to the person of such officer ... is guilty of a felony of the third degree....
(Emphasis added.) The statute defines the prohibited act and the requisite degree of blameworthiness to establish guilt. The statute's language requires that the offender's level of culpability be greater than negligence or recklessness by including a "knowledge" element. It logically follows that if a person is charged with "knowingly and willfully" restricting, obstructing, or opposing a law enforcement officer "in the lawful execution of any legal duty," one element of the crime is that the alleged offender knew that the person he was resisting was a law enforcement officer. This is precisely the interpretation mandated by our recent holding in Thompson, 695 So.2d at 693. Interestingly enough, it is also the precise conclusion we reached in Colson, where we held that "[w]hether or not defendant had enough left to know what he was doing was a question for the jury." 73 So.2d at 862.

CONCLUSION
Consistent with the proposals of Professors Scott and LaFave discussed above, the American Law Institute committee has explained that when "purpose" or "knowledge" is an element of a crime, proof of intoxication may logically negate the existence of either. See State v. Doyon, 416 A.2d 130, 136 (R.I. 1980) (citing Model Penal Code, Tent. Draft No. 9 at 2-9 (1959)). To violate section 843.01, it is evident that "knowledge" of the fact that one is obstructing an officer is an *926 element of the crime of resisting arrest with violence.[19]Thompson; Chicone. Therefore, under the sensible "element" approach to determining whether voluntary intoxication can negate the mental element of a crime, it is apparent that a defendant would be allowed to put on evidence that his level of intoxication rendered him unable to form the "knowledge" element of the crime of resisting arrest with violence under section 843.01.[20]
I therefore conclude that the trial court should have granted petitioner's request for an instruction on the defense of voluntary intoxication.
KOGAN, C.J., concurs.
NOTES
[1] See Linehan v. State, 476 So.2d 1262, 1264 (Fla.1985) (The arson statute reads in part: "Any person who willfully and unlawfully, by fire or explosion, damages or causes to be damaged ... [a] dwelling ... is guilty of arson in the first degree which constitutes a felony of the first degree....").
[2] For instance, the statute might be recast to read: "Whoever knowingly and willfully resists... an officer ... in the lawful execution of any legal duty, with the intent of doing violence to the person of such officer ... is guilty of a felony of the third degree."
[3] See Linehan, 476 So.2d at 1264 ("Florida courts have rejected the voluntary intoxication defense in the following cases involving general intent crimes.... Williams v. State, 250 So.2d 11 (Fla. 3d DCA 1971) (violence while resisting arrest)...."). Cf. Colson v. State, 73 So.2d 862 (Fla.1954) (the jury did not err in rejecting the claim that the defendant was too drunk to "resist... the sheriff"). We disapprove Gonzales v. State, 488 So.2d 610 (Fla. 4th DCA 1986), wherein the court ruled that "resisting an arrest with violence[] is a specific intent crime." Id. at 610.
[4] Consider how courts resolve the threshold issue of what separates general from specific intent. The California Supreme Court uses the following test to distinguish between the degrees of criminal intent:

When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intent is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.
People v. Daniels, 14 Cal.3d 857, 122 Cal.Rptr. 872, 537 P.2d 1232, 1234 (1975) (emphasis added) (quoting People v. Hood, 1 Cal.3d 444, 82 Cal.Rptr. 618, 462 P.2d 370, 378 (1969)); accord People v. Superior Court, 10 Cal.4th 735, 42 Cal. Rptr.2d 377, 896 P.2d 1387, 1390 (1995) (holding violation of hate crime statute not specific intent crime since sentence enhancement provisions are "without reference to the perpetrator's seeking any further consequence").
The Vermont Supreme Court has adopted a similar distinction, defining general intent as "the intent to do that which the law prohibits." State v. Audette, 149 Vt. 218, 543 A.2d 1315, 1316 (1988) (quoting Black's Law Dictionary 729 (5th ed.1979)). Accordingly, it is "not necessary for the prosecution to prove that the defendant intended the precise harm or the precise result which eventuated." Id. at 1316. In comparison, specific intent is an intent "to accomplish the precise act which the law prohibits." Id.
Let us also consider how a statute's wording has been used in determining what is and is not a specific intent crime. The adverbs "knowingly, willfully, and intentionally" are the most commonly used. The term "knowingly" by itself does not create a specific intent crime. United States v. Manganellis, 864 F.2d 528, 536 (7th Cir.1988). Rather, "it defines the act in question in a way which is generally inferable from evidence of the act." Id. at 536 (emphasis added). Similarly, the word "willful" does not signal a specific intent requirement, instead meaning no more than "a willingness to do the proscribed act." People v. Greenfield, 134 Cal.App.3d Supp. 1, 184 Cal.Rptr. 604, 605 (1982); see also United States v. Pomponio, 429 U.S. 10, 12, 97 S.Ct. 22, 23-24, 50 L.Ed.2d 12 (1976) (holding that term "willful" in statute prohibiting willful filing of false income tax return means "a voluntary, intentional violation of a known legal duty"); accord Cheek v. United States, 498 U.S. 192, 201, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991) (concluding that in statute prohibiting non-filing of federal income tax return the "standard for the statutory willfulness is the `voluntary, intentional violation of a known legal duty'").
Likewise, an offender who "intentionally" eludes police and violently resists arrest is culpable of more than negligence or recklessness, but the term "does not designate an additional mental state beyond that accompanying the act." State v. Huber, 356 N.W.2d 468, 473 (S.D.1984). In contrast, a statute's use of the word "intent" can create a specific intent crime. See United States v. Liefer, 778 F.2d 1236, 1242-43 (7th Cir.1985) (holding that where defendant charged with conspiracy to distribute marijuana, defendant's "specific intent to distribute was an essential element of the crime").
[5] The Model Penal Code does not distinguish between general and specific intent, instead establishing the following degrees of culpability as applied to each statutory element of the alleged crime: purposely, knowingly, recklessly, or negligently. Model Penal Code § 2.02 (Proposed Official Draft 1962). Professor LaFave has noted that the Model Penal Code has influenced many courts and provided "an aid in the interpretation of the codes and in restating or reshaping areas of the unwritten law." 1 Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law at VII (1986) (quoting Herbert Wechsler, Foreword to American Law Institute, Model Penal Code and Commentaries xi (1985)) (emphasis added).
[6] See Gardner v. State, 480 So.2d 91, 92 (Fla. 1985) (first-degree murder is a specific intent crime); Cirack v. State, 201 So.2d 706 (Fla.1967) (same).
[7] See Bell v. State, 394 So.2d 979 (Fla.1981) (robbery is specific intent crime); Kennedy v. State, 633 So.2d 1145 (Fla. 2d DCA 1994) (same).
[8] See Heddleson v. State, 512 So.2d 957, 959 (Fla. 4th DCA 1987) (kidnapping is a specific intent crime).
[9] See Bartley v. State, 689 So.2d 372, 373 (Fla. 1st DCA 1997) (aggravated assault is specific intent crime); Dobosh v. State, 684 So.2d 276 (Fla. 5th DCA 1996) (same).
[10] See Harris v. State, 415 So.2d 135, 136 (Fla. 5th DCA 1982) (battery is a specific intent crime).
[11] See Huber v. State, 669 So.2d 1079, 1083 (Fla. 4th DCA 1996) (aggravated battery is specific intent crime).
[12] See Urquhart v. State, 676 So.2d 64, 66 (Fla. 1st DCA 1996) (recognizing that both attempted burglary and burglary of a structure are specific intent crimes).
[13] See Fouts v. State, 374 So.2d 22 (Fla. 2d DCA 1979) (escape is specific intent crime), overruled on other grounds, Parker v. State, 408 So.2d 1037 (Fla.1982).
[14] See Spivey v. State, 680 So.2d 565, 566 (Fla. 1st DCA 1996)(theft is a specific intent crime) (citing Redding v. State, 666 So.2d 921 (Fla. 1st DCA 1995)).
[15] See Linehan v. State, 476 So.2d 1262, 1265 (Fla.1985) (holding that arson is a general intent crime).
[16] There may be an emerging trend nationwide to abolish the defense of voluntary intoxication in the wake of the Supreme Court's recent holding in Montana v. Egelhoff, 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (holding that Montana statute banning voluntary intoxication defense did not violate due process). Currently, at least ten states have either statutes or case law that ban voluntary intoxication defenses. See John Gibeaut, Sobering Thoughts, 83 A.B.A.J. 56, 58-59 (May 1997).
[17] Professor LaFave and Professor Hall seem to be the most frequently cited authorities in favor of abolishing the doctrines of specific and general intent. Describing the doctrine of specific intent, Professor Hall verbosely states that: "The specific intent doctrine is a technique for expression of the policy of alleviation of the rigor of penal liability of inebriates." Jerome Hall, Intoxication and Criminal Responsibility, 57 Harv. L.Rev. 1045, 1066 (1944). Professor Hall further explains the artificial nature of the "distinction" between specific and general intent as follows:

While there are degrees of concentration or intensity in the response designated "intentional conduct," the paramount fact is that neither common experience nor psychology knows any such actual phenomenon as "general intent" that is distinguishable from "specific intent."
Id. at 1064.
[18] Other scholars have described the confusion attended by analyzing a statute using the concepts of specific and general intent:

"Offense analysis"under which each offense has one state of mind requirement existed and continues to exist as the dominant view of mens rea. Rather than requiring culpability as to "each material element," for example, several codes require an "act or intent, or criminal negligence" for "every crime or public offense." Courts and statutes continue to speak of "general intent offenses" and "specific intent offenses." Even the modern codes contain references to "an offense for which [a specified level of culpability] suffices to establish culpability," as if only one culpability level applied to each offense.
The offense analysis approach continues even though it is not clearly viable even within its own terms. Unlike the "wickedness" notion [where each offense has one state of mind requirement], which could be applied generally, the specific state of mind requirement necessarily involves recognition of the multifaceted nature of the mental state for each offense. Under offense analysis, burglary requires an intention to commit a felony within a dwelling at night. Yet this "intention" requirement has several distinguishable parts: the intent to enter, the intent to do so at night, the intent that the building be a dwelling, and the intent to commit a felony within. Just as a broken clock is correct twice a day, offense analysis can accurately describe the culpability elements of an offense only if the same level of culpability (e.g., intention) is fortuitously the appropriate one for each element of an offense. But where different culpability levels are appropriate for different elements, offense analysis fosters definitions that obscure but do not eliminate the confusion.
Paul H. Robinson & Jane A. Grall, Element Analysis in Defining Criminal Liability: the Model Penal Code and Beyond, 35 Stan. L.Rev. 681, 688-89 (1983) (second brackets added).
[19] "Purposeful" conduct and "knowing" conduct are both "willful." See Robinson & Grall, Element Analysis, supra note 15, at 695. Accordingly, we can probably conclude that "willful" conduct (as an element of section 843.01) is essentially "purposeful" conduct. Therefore, like "purposeful" conduct, "willful" conduct may be negated by a sufficient level of intoxication.
[20] This result makes sense as a practical matter. There is certainly serious doubt as to whether an extremely intoxicated defendant can actually "know" what he is doing. One writer sums up the abstract theory of specific intent by stating that it is "apparent that the criminal liability of the grossly intoxicated offender depends upon the crime fortuitously committed while incapacitated." Comment, Criminal Law: Chronic Alcoholism as a Defense to Crime, 61 Minn. L.Rev. 901, 904 n. 14 (1977) (quoting Robert L. Deddins, Note, Volitional Fault and the Intoxicated Criminal Offender, 36 U. Cin. L.Rev. 258, 276 (1967)).