DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Petitioner,

v.

**JAMES FRANCIS KIGAR,**
Respondent.

No. 4D19-0600

[August 7, 2019]

Petition for writ of certiorari to the Fifteenth Judicial Circuit, Palm Beach County; Laura Johnson, Judge; L.T. Case No. 502016CF010364AMB.

Ashley Moody, Attorney General, Tallahassee, and Lindsay A. Warner, Assistant Attorney General, West Palm Beach, for petitioner.

Jeremy J. Kroll of Dutko & Kroll, P.A., Fort Lauderdale, for respondent.

GERBER, J.

The state charged the defendant with over one hundred counts of patient brokering in violation of section 817.505(1)(a), Florida Statutes (2016). Upon information that the defendant would assert an "advice of counsel" defense, the state filed a motion in limine seeking to prohibit the defendant from asserting such a defense. The circuit court, after considering the parties' evidence and arguments, entered an order denying the state's motion in limine.

The state has now filed with this court a petition for a writ of certiorari, requesting this court to quash the circuit court's order denying the state's motion in limine, find that section 817.505 is a general intent crime, and preclude the defendant from asserting an "advice of counsel" defense at trial.

As a matter of first impression, we hold that "advice of counsel" is not a defense to the general intent crime of patient brokering as provided in section 817.505(1)(a), Florida Statutes (2016). Therefore, we grant the state's petition.

We present this opinion in three parts:
1. The procedural history;
2. The parties' arguments on this petition; and
3. Our review.

## 1. *Procedural History*

### a. *The Florida and Federal Statutes at Issue*

The state charged the defendant with over one hundred counts of patient brokering in violation of section 817.505(1)(a), Florida Statutes (2016). At that time, section 817.505(1)(a) provided:

> (1) It is unlawful for any person, including any health care provider or health care facility, to:
>
> (a) Offer or pay any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, to induce the referral of patients or patronage to or from a health care provider or health care facility[.]

§ 817.505(1)(a), Fla. Stat. (2016).[1]

Section 817.505(3), Florida Statutes (2016), included a "safe harbor" providing that 817.505 shall not apply to certain enumerated practices. These exempt enumerated practices at that time included:

> Any discount, payment, waiver of payment, or payment practice *not prohibited by 42 U.S.C. s. 1320a-7b(b) or regulations promulgated thereunder.*

§ 817.505(3)(a), Fla. Stat. (2016) (emphasis added).[2]

---

[1] The 2019 version of section 817.505(1)(a) also prohibits any person from offering or paying any "benefit" to induce the referral of patients or patronage to or from a health care provider or health care facility. § 817.505(1)(a), Fla. Stat. (2019).

[2] The 2019 version of section 817.505(3)(a) now uses slightly different and more specific language. Section 817.505(3)(a) now provides that section 817.505 shall not apply to any discount, payment, waiver of payment, or payment practice "expressly authorized by 42 U.S.C. s. 1320a-7b(b)(3) or regulations adopted thereunder." § 817.505(3)(a), Fla. Stat. (2019) (emphasis added).

At the time of the alleged offenses, 42 U.S.C. section 1320a-7b(b)(2) (2016) provided, in pertinent part:

> (2) Whoever *knowingly and willfully* offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . .
>
> shall be guilty of a felony . . . .

(emphasis added).

Section 1320a-7b(b)(3) further provided that paragraph (2) shall not apply to certain enumerated practices, none of which are relevant here.

### b. *The State's Motion in Limine*

Upon information that the defendant would assert an "advice of counsel" defense, the state filed a motion in limine seeking to prohibit the defendant from asserting such a defense.

The state's motion argued that section 817.505(1)(a)'s prohibition on patient brokering is a *general intent* crime, not a *specific intent* crime, and "advice of counsel" is not a defense to a general intent crime. *See State v. Franchi*, 746 So. 2d 1126, 1128 (Fla. 4th DCA 1999) ("misadvice of counsel" defense is not available for a general intent crime); *Aversano v. State*, 966 So. 2d 493, 495 (Fla. 4th DCA 2007) ("advice of counsel defense . . . applies only to a specific intent crime").

The state argued that section 817.505(1)(a) is a general intent crime based on the statute's plain language, because the statute "does not require a heightened or particularized intent beyond the mere intent to commit the act itself." *Cf. Franchi*, 746 So. 2d at 1128 ("The plain language of [section 843.12] does not require a heightened or particularized intent beyond the mere intent to commit the act itself or the intent to cause the natural and necessary consequences of the act, i.e., to 'knowingly' act. Hence, we conclude that section 843.12 is a general, rather than a specific,

intent statute, for which the defense of 'misadvice of counsel' is not available.").

Further, the state contended, unlike other sections within chapter 817, section 817.505(1)(a) does not contain any "specific intent" words which might suggest the possibility of a heightened mens rea requirement. *See* § 817.03, Fla. Stat. (2016) ("with a fraudulent intent"); § 817.233, Fla. Stat. (2016) ("willfully and with intent to injure or defraud"); § 817.50(1), Fla. Stat. (2016) ("willfully and with intent to defraud").

### c. *The Defendant's Response to the State's Motion in Limine*

In response to the state's motion in limine, the defendant filed a memorandum of law arguing that he should be able to assert an "advice of counsel" defense. Specifically, the defendant argued:

> [W]here the statute is silent and does not contain any clear indication that the Florida Legislature explicitly intended to remove *mens rea*, clearly established law mandates this Court to impute a *mens rea* requirement, both because general intent crimes are disfavored and sharply limited, and because such inferences and presumptions violate the rule of lenity. In short, unless there is a clear and purposeful statement in the statute or in the legislative history indicating that the Florida Legislature specifically intended to exclude an element of scienter from [section 817.505(1)(a)] then this Court must find that there is one.

In furtherance of this argument, the defendant contended that because section 817.505(3)(a) refers to 42 U.S.C. section 1320a-7b(b), which expressly requires that its violation occur "knowingly and willfully," the same mens rea requirement must be imputed into section 817.505(1)(a).

Alternatively, the defendant argued, even if the Florida Legislature intended to exclude a mens rea requirement from section 817.505(1)(a), the United States Constitution's Supremacy Clause causes 42 U.S.C. section 1320a-7b(b) to preempt section 817.505(1)(a), thereby imputing section 1320a-7b(b)'s mens rea requirement into section 817.505(1)(a).

Under either theory, the defendant argued, requiring the state to prove a defendant's mens rea for violating section 817.505(1)(a) protects against prosecution for negligent, mistaken, or inadvertent conduct, including good faith reliance on the advice of counsel. Thus, the defendant argued, advice of counsel is a defense to prosecution under section 817.505(1)(a).

4

### d. *The State's Reply to the Defendant's Response*

In reply to the defendant's response, the state reiterated that because section 817.505(1)(a) "does not require a heightened or particularized intent beyond the mere intent to commit the act itself," *Franchi*, 746 So. 2d at 1128, section 817.505(1)(a)'s prohibition on patient brokering is a *general intent* crime, not a *specific intent* crime.

The state also added that even assuming section 817.505 imputed the "knowingly and willfully" mens rea from 42 U.S.C. section 1320a-7b(b), section 817.505 would still be a general intent crime. The state noted that 42 U.S.C. section 1320a-7b(h) is entitled "Actual knowledge or specific intent *not required*," and provides: "With respect to violations of this section, *a person need not have actual knowledge of this section or specific intent* to commit a violation of this section." (emphasis added).

### e. *The Circuit Court's Order Denying the State's Motion in Limine*

The circuit court, after considering the parties' evidence and arguments, entered an order denying the state's motion in limine.

In the order, the circuit court began by recognizing that the "advice of counsel defense applies only to a specific intent crime." Therefore, the circuit court reasoned, "to determine whether the advice-of-counsel defense is available to a defendant charged with violations of section 817.505, Florida Statutes, this Court must first determine whether Patient Brokering under [section 817.505] is a general or specific intent crime."

According to the circuit court, "Looking to the plain language of the statute, [section 817.505] does not require a heightened or particularized intent beyond the mere intent to commit the act itself. Therefore, on its face, [section 817.505] appears to be a general, rather than specific, intent statute."

The circuit court then turned to the defendant's argument that under the United States Constitution's Supremacy Clause, section 817.505 is preempted by 42 U.S.C. section 1320a-7b(b)'s requirement of a "knowingly and willfully" mens rea. Relying on the Fifth District's opinion in *State v. Rubio*, 917 So. 2d 383 (Fla. 5th DCA 2005), as adopted by the Florida Supreme Court in *State v. Rubio*, 967 So. 2d 768 (Fla. 2007), the circuit court found that section 817.505 is not preempted by section 1320a-7b(b).

Despite these two findings, the circuit court nevertheless concluded that section 817.505 was a specific intent statute for which the defendant

could assert an "advice of counsel" defense. In a section which the circuit court entitled "Incorporation by Reference," the circuit court reasoned:

> Although not preempted by [42 U.S.C. section 1320a-7b(b)], because the safe harbor provision of section 817.505(3)(a) explicitly exempts practices "not prohibited by 42 U.S.C. § 1320a-7b(b)," [section 817.505] effectively incorporates by reference [42 U.S.C. section 1320a-7b(b)]. The Florida Supreme Court has held that "the Legislature may approve and adopt provisions of federal statutes and administrative rules made by federal administrative bodies, which provisions are in existence and in effect at the time the Legislature acts." *State v. Rodriquez*, 365 So. 2d 157, 160 (Fla. 1978) (citing *Freimuth v. State*, 272 So. 2d 473 (Fla. 1972)).

> [Section 817.505], including [subsection (3)(a)] containing the safe harbor provision, was first enacted in 1996, while the modern version of [42 U.S.C. section 1320a-7b(b)] was first enacted in 1972. Congress amended [42 U.S.C. section 1320a-7b(b)] multiple times both before and after the enactment of the [section 817.505]. [The version of 42 U.S.C. section 1320a-7b(b)] in effect when the Legislature enacted [section 817.505] provided that whoever "knowingly and willfully" violated [42 U.S.C. section 1320a-7b(b)] shall be guilty of a felony. . . . .

> The "knowingly and willfully" requirement in [42 U.S.C. section 1320a-7b(b)] requires proof that "the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful." [*State v. Harden*, 938 So. 2d 480, 491 (Fla. 2006)], (quoting *United States v. Starks*, 157 F.3d 833, 838 (11th Cir. 1998)). Thus, the "knowingly and willfully" mens rea element of [42 U.S.C. section 1320a-7b(b)] is incorporated by reference into [section 817.505]. Further, because [section 817.505] contains a "willfully and knowingly" mens rea as incorporated by reference, Patient Brokering is a specific intent crime. As such, a defendant may assert the advice of counsel defense when charged with violations of [section 817.505].

Based on the foregoing reasoning, the circuit court denied the state's motion in limine.

6

## 2. *The Parties' Arguments on this Petition*

### a. *The State's Arguments*

The state has now filed with this court a petition for a writ of certiorari, requesting this court to quash the circuit court's order denying the state's motion in limine, find that section 817.505 sets forth a general intent crime, and preclude the defendant from asserting an "advice of counsel" defense at trial.

The state correctly cites its burden as having to show that the circuit court's order departs from the essential requirements of law by effectively negating or significantly impairing the state's ability to prosecute or present the case, because if the defendant is acquitted, the principles of double jeopardy prevent the state from seeking review, thus making the prejudice resulting from the earlier order irreparable. *See generally State v. Pettis*, 520 So. 2d 250, 252-53 (Fla. 1988) (discussing a district court's ability to consider state petitions for certiorari to review pretrial orders).

According to the state, the circuit court's order here meets that burden, because section 817.505 is a general intent crime, and allowing the defendant to present an "advice of counsel" defense to a general intent crime constitutes a departure from the essential requirements of the law for which the state would suffer irreparable harm upon an acquittal.

More specifically, the state contends the circuit court's order departs from the essential requirements of the law for the following reasons:

> First, the trial court conceded that the advice-of-counsel defense is precluded when applied to a general-intent crime. Second, the trial court conceded that the plain language of [section 817.505] explicitly demonstrates that it is in fact a general-intent crime. And third, the trial court conceded that the state statute has previously been upheld by the Florida Supreme Court as to not be preempted by federal law pursuant to *State v. Rubio*, 967 So. 2d 776 (Fla. 2007) . . . .

> Yet in spite of these dispositive facts, the trial court concluded, after incorrectly determining [42 U.S.C. section 1320a-7b(b)] was a specific-intent crime despite the federal statute requiring only general intent, that the Florida Legislature's limited incorporation of the federal statute as a safe-harbor provision in [section 817.505] entitled the trial court to rewrite the Florida statute and add the new element

7

of specific intent found in neither the state nor federal statute. The trial court found, without reference to any legal authority, that the Florida Legislature's limited "incorporation by reference" of the safe-harbor provision required that the state statute must mirror the federal statute in its entirety, regardless of the Legislature's intent not to do so . . . .

The trial court's order directly conflicts with *Rubio*'s holding that [section 817.505] incorporated [section 1320a-7b(b)] *only* as to the safe-harbor provision . . . .

The trial court erroneously heightened the mens rea required for [section 817.505] by taking out of context a statement from *Harden v. State*, 938 So. 2d 480 (Fla. 2006), regarding the meaning of the terms "willfully" and "knowingly" in [42 U.S.C. section 1320a-7b(b)]. Moreover, the underlying premise of the trial court's order that the federal statute is a specific-intent crime is false because the federal statute is a general-intent crime, clarified by Congress in subsection (h) of 42 U.S.C. section 1320a-7b.

## b. *The Defendant's Response*

The defendant's response summarized his three arguments as follows:

First, the present ruling does not substantially impair, or in any way impair, the State's ability to present its case . . . . The trial court's Order presents no such impairment but merely provides [the defendant] an ability to demonstrate good faith attempts to navigate the confusing world of anti-kickback statutes through advice of counsel . . . .

Second, to obtain a petition for writ of certiorari, the trial court's order must constitute a departure from the essential requirements of law. In order to constitute such a departure, "[t]here must be a violation of a clearly established principle of law resulting in a miscarriage of justice" *Belvin v. State*, 922 So. 2d 1046, 1048 (Fla. 4th DCA 2006). There is no case law in the State of Florida that interprets [section 817.505(3)(a)] as it relates to the inclusion of the exemptions, exceptions, intent requirements and regulatory exceptions to [42 U.S.C. section 1320a-7b(b)]. The Fifth District Court opinion in *Rubio* merely held that [section 817.505] is not unconstitutional for the failure to contain an explicit

willfulness provision. That holding explicitly references the existence of [section 817.505(3)(a)] as the court's reason that the statute is constitutional. Nothing about that holding is inconsistent with the trial court's order.

The plain language of [section 817.505(3)(a)] actually conveys that any practice or conduct not prohibited under [42 U.S.C. section 1320a-7b(b)] shall not constitute a violation of [section 817.505]. [Section 817.505(3)(a)] incorporates by reference [all of 42 U.S.C. section 1320a-7b(b)] that was effective in 1996, including regulatory exceptions and the portions of the statute that create the knowing and willful mens rea standard. The plain language of [42 U.S.C. section 1320a-7b(b)] suggests [section] 817.505 is inapplicable to any conduct not criminalized by [42 U.S.C. section 1320a-7b(b)], which naturally and logically incorporates the federal scienter into [section 817.505]. Further, the rule of lenity requires [section 817.505] to be construed in the light most favorable to the accused, militating towards the inclusion of the specific intent language in [section 817.505]. The trial court was correct in its order, and the order does not violate the essential requirements of law.

Finally, [42 U.S.C. section 1320a-7b(b)] is not a general intent statute. First, as the trial court's order clarifies, the Legislature may adopt provisions of federal statutes and, when it does so, it is the provisions in existence and in effect at the time the Legislature acts that are adopted. When [section 817.505] was enacted in 1996, [42 U.S.C. section 1320a-7b(h)] did not exist and, to this day, [section 817.505(3)(a)] does not include this provision by reference. Thus, [42 U.S.C. section 1320a-7b(h)] is not applicable to this issue.

Second, [42 U.S.C. section 1320a-7b(h)] did not modify the knowing and willful intent requirement under [42 U.S.C. section 1320a-7b(b)]. This premise is confirmed by the actual language in [42 U.S.C. section 1320a-7b(h)], federal case law, the current federal jury instruction from the Eighth Circuit Court of Appeals and the Congressional record on the issue. The addition of [42 U.S.C. section 1320a-7b(h)] to [42 U.S.C. section 1320a-7b(b)] is not relevant to the trial court's decision to permit the assertion of the advice of counsel defense in [the defendant's] case.

(alterations, internal citations, and quotation marks omitted).

### 3. *Our Review*

We agree with the state's arguments on this petition. We conclude that the circuit court's order departs from the essential requirements of law by effectively negating or significantly impairing the state's ability to prosecute or present the case, because if the defendant is acquitted, the principles of double jeopardy prevent the state from seeking review, thus making the prejudice resulting from the earlier order irreparable. *Pettis*, 520 So. 2d at 252-53.

We need only briefly address the state's burden to show irreparable harm, as the state has easily met that burden. At this juncture, it appears the state is not disputing the defendant's allegation that he relied on the advice of counsel in taking the actions which constitute his alleged violations of section 817.505(1)(a). Thus, if we were to let stand the circuit court's order finding that advice of counsel is a defense to such a crime, the defendant's acquittal on such alleged violations would be inevitable. In the event of acquittal, principles of double jeopardy would prevent the state from seeking review, thus making the prejudice irreparable.

Therefore, our focus is on the state's burden to show that the circuit court's order departs from the essential requirements of the law. The state has met that burden as well. We reach that conclusion for three reasons.

### a. *Section 817.505 does not incorporate section 1320a-7b(b) in its entirety.*

First, no authority exists for the circuit court's finding that section 817.505 "effectively incorporates by reference" 42 U.S.C. section 1320a-7b(b) in its entirety, including section 1320a-7b(b)'s inclusion of the "knowingly and willfully" mens rea.

Instead, section 817.505(3)'s plain language, providing that section 817.505 shall not apply to certain enumerated practices, merely includes in these exempt enumerated practices "[a]ny discount, payment, waiver of payment, or payment practice not prohibited by 42 U.S.C. s. 1320a-7b(b) or regulations promulgated thereunder." § 817.505(3)(a), Fla. Stat. (2016). The antecedent phrase "[a]ny discount, payment, waiver of payment, or payment practice not prohibited by" cannot be judicially disconnected from the consequent phrase "42 U.S.C. s. 1320a-7b(b) or regulations promulgated thereunder."

Thus, taken in context, section 817.505(3)(a)'s reference to section 1320a-7b(b) at best incorporates only section 1320a-7b(b)'s exempt enumerated practices, as contained in section 1320a-7b(b)(3). *See Rubio*, 917 So. 2d at 396 (section 817.505's prohibition against patient brokering "is not limited to situations involving Medicaid or federal programs").

### b. *The Circuit Court's reliance on State v. Harden was misplaced.*

Second, the circuit court's reliance on *Harden*, 938 So. 2d at 491, for the proposition that section 1320a-7b(b)'s "knowingly and willfully" mens rea can be incorporated into section 817.505, to require proof that "the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful," was misplaced.

In *Harden*, our supreme court held that the anti-kickback provision of a different Florida statute, namely section 409.920(2)(e), Florida Statutes (2000), was unconstitutional in part because it did not include a "willfulness" requirement. *Id.* at 491-93. In reaching that holding, the supreme court stated that the "knowingly and willfully" requirement in 42 U.S.C. section 1320a-7b(b) requires proof that "the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful." *Id.* at 491 (citation omitted). A second intertwined reason for the supreme court's holding that section 409.920(2)(e) was unconstitutional was because section 409.920(2)(e) contained no "safe harbor" exemptions. *Id.* at 492.

However, in this case, unlike section 409.920(2)(e), section 817.505(3)(a) contains "safe harbor" exemptions. That difference became significant when our supreme court, in *State v. Rubio*, 967 So. 2d at 776, was faced with the argument that section 817.505 also is unconstitutional because it likewise fails to impose a "willfulness" mens rea requirement. The supreme court, contrary to its holding in *Harden*, adopted in *Rubio* the Fifth District's reasoning that section 817.505 remains constitutional because, unlike section 409.920(2)(e) which lacked any "safe harbor" exemptions, "[s]ection 817.505(3)(a) specifically provides that the statute does not apply to any payment practice *not* prohibited by 42 U.S.C. s. 1320a–7b(b)." *Rubio*, 917 So. 2d at 395.

Thus, even if *Harden* defined section 1320a-7b(b)'s "knowingly and willfully" mens rea to require proof that the defendant "acted with knowledge that his conduct was unlawful," i.e., with specific intent, *Rubio* suggests that such a definition cannot be incorporated into section

11

817.505 due to the "safe harbor" distinction between sections 490.920(2)(e) and 817.505(3)(a).

Further, because *Harden* was decided in 2006, our supreme court did not discuss the import of Congress's later enactment of 42 U.S.C. section 1320a-7b(h) (2010), entitled "Actual knowledge or specific intent *not required,*" which provides: "With respect to violations of this section, *a person need not have actual knowledge of this section or specific intent* to commit a violation of this section." (emphasis added).

While we are not permitted to quarrel with *Harden* having defined section 1320a-7b(b)'s "knowingly and willfully" mens rea to require proof that the defendant "acted with knowledge that his conduct was unlawful," i.e., with specific intent, we leave to our supreme court's consideration the possibility that *Harden*'s definition is no longer accurate in light of section 1320a-7b(h)'s plain language. *See U.S. v. St. Junius*, 739 F.3d 193, 210 (5th Cir. 2013) ("Section 1320a–7b(h) defines willfulness as it pertains to the Anti–Kickback Statute. In doing so, Section 1320a–7b(h) clarifies that the Government is not required to prove actual knowledge of the Anti–Kickback Statute or specific intent to violate it. Instead, the Government must prove that the defendant willfully committed an act that violated the Anti–Kickback Statute.").

### c. *"Knowingly and Willingly" does not equate to specific intent.*

Third, even if the "knowingly and willingly" mens rea is somehow imputed into section 817.505(1)(a) by operation of law as the defendant argues, such an incorporation would not transform a violation of section 817.505(1)(a) from a general intent crime into a specific intent crime.

We reach this conclusion based on our supreme court's opinion in *Frey v. State*, 708 So. 2d 918 (Fla. 1998). In *Frey*, the supreme court was faced with a certified question of whether the offense of resisting arrest with violence, as provided in section 843.01, Florida Statutes (1993), was a specific intent crime to which the defense of voluntary intoxication applied. At that time, section 843.01 provided, in pertinent part:

> Whoever *knowingly and willfully* resists, obstructs, or opposes any officer . . . in the lawful execution of any legal duty, by offering or doing violence to the person of such officer . . . is guilty of a felony of the third degree . . . .

§ 843.01, Fla. Stat. (1993) (emphasis added).

12

To answer the certified question, the supreme court examined the "contours of specific intent, as opposed to general intent, crimes" by quoting the following treatise description:

> [T]he most common usage of "specific intent" is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime. Common law larceny, for example, requires the taking and carrying away of the property of another, and the defendant's mental state as to this act must be established, but in addition it must be shown that there was an "intent to steal" the property. Similarly, common law burglary requires a breaking and entry into the dwelling of another, but in addition to the mental state connected with these acts it must also be established that the defendant acted "with intent to commit a felony therein." The same situation prevails with many statutory crimes: assault "with intent to kill" as to certain aggravated assaults; confining another "for the purpose of ransom or reward" in kidnapping; making an untrue statement "designedly, with intent to defraud" in the crime of false pretenses; etc.

*Id.* at 919 (quoting 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 3.5(e) (1986) (footnotes omitted)).

Applying the foregoing treatise description, the supreme court looked to section 843.01's plain language to conclude that resisting arrest with violence is a general intent crime, not a specific intent crime. *Id.* at 919-20. The supreme court reasoned, in pertinent part:

> The statute's plain language reveals that no heightened or particularized, i.e., no specific, intent is required for the commission of this crime, only a general intent to "knowingly and willfully" impede an officer in the performance of his or her duties . . . . Only if the present statute were to be recast to require a heightened or particularized intent would the crime of resisting arrest with violence be a specific intent crime.

*Id.* at 920 (footnotes omitted).

Since the supreme court issued *Frey*, we have relied on *Frey* on two occasions to determine whether a crime is a specific intent or general intent crime. *See State v. Franchi*, 746 So. 2d 1126, 1128 (Fla. 4th DCA

1999) (aiding escape is a general intent crime); *Olenchak v. State*, 183 So. 3d 1227, 1229 (Fla. 4th DCA 2016) (sexual battery is a general intent crime).

We rely on *Frey* again here to conclude that patient brokering in violation of section 817.505 is a general intent crime. Even if we were to assume that the "knowingly and willingly" mens rea is somehow incorporated into section 817.505(1)(a), the statute's plain language reveals that no heightened or particularized, i.e., no specific, intent is required for the commission of this crime. *See Frey*, 708 So. 2d at 920; *Franchi*, 746 So. 2d at 1128.

### *Conclusion*

Having concluded that section 817.505(1)(a)'s prohibition on patient brokering is a general intent crime, not a specific intent crime, we further conclude that the defendant cannot assert "advice of counsel" as a defense here. *See Franchi*, 746 So. 2d at 1128 ("misadvice of counsel" defense is not available for a general intent crime); *Aversano v. State*, 966 So. 2d 493, 495 (Fla. 4th DCA 2007) ("advice of counsel defense . . . applies only to a specific intent crime").

Based on the foregoing, we grant the state's petition and quash the circuit court's order denying the state's motion in limine. We direct the circuit court, on remand, to enter an order granting the state's motion in limine on the basis that "advice of counsel" is not a defense to the general intent crime of patient brokering as provided in section 817.505(1)(a), Florida Statutes (2016).

*Petition granted with instructions.*

MAY and KUNTZ, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***