[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 20, 2012
JOHN LEY
CLERK

No. 10-15350

_____

D.C. Docket No. 8:10-cr-00313-RAL-EAJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HECTOR MANUEL ROMO-VILLALOBOS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 20, 2012)

Before MARCUS, COX and SILER,[*] Circuit Judges.

PER CURIAM:

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Hector Romo-Villalobos appeals his convictions and 37-month total sentence for illegal reentry after a felony, pursuant to 8 U.S.C. § 1326(a) and (b)(1), and for illegal reentry after conviction of false representation, pursuant to 8 U.S.C. §§ 1325(a)(1) and 1329. On appeal, he argues that: (1) he should not have received a 16-level sentencing enhancement based on his Florida conviction for resisting an officer with violence, because Florida's statute does not constitute a crime of violence; and (2) his 37-month sentence was unreasonable because the district court failed to grant him a variance based on sentencing disparities caused by the Middle District of Florida's lack of a fast-track program. After careful review, we affirm.

We review de novo whether a defendant's prior conviction qualifies as a crime of violence under the sentencing guidelines. United States v. Palomino Garcia, 606 F.3d 1317, 1326 (11th Cir. 2010). We review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion." United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting Rita v. United States, 551 U.S. 338, 351 (2007)).

The relevant facts and procedural history are these. A grand jury indicted Romo-Villalobos on two counts, charging him with: (1) illegal reentry after

conviction of a felony; and (2) illegal reentry after conviction of false representation. He pled guilty to both counts without a plea agreement.

Prior to this indictment, Romo-Villalobos, a native and citizen of Mexico, had been removed from the United States twice before and had illegally reentered after each deportation. He was deported the first time after being convicted for false representation. He was deported the second time after being convicted in Florida for resisting an officer with violence, under Florida Statute § 843.01.

In sentencing Romo-Villalobos for the instant illegal reentry offenses, the district court imposed a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) for having been previously deported after a conviction for a felony crime of violence, relying on the Florida conviction. The district court then imposed a 3-level reduction for acceptance of responsibility, yielding a total offense level of 21. Romo-Villalobos had one criminal history point, which established a criminal history category of I. Based on his criminal history category of I and the adjusted offense level of 21, his resulting guideline range was 37-46 months' imprisonment. The court sentenced Romo-Villalobos to 37 months' imprisonment as to count one and 24 months' imprisonment as to count two, the terms to run concurrently. In explaining the sentence, the court said that it had considered all the statutory factors, especially deterrence and protection of the public. It

3

concluded that, after considering the sentencing guidelines and all of the 18 U.S.C. § 3553(a) factors, the sentence it imposed was more than reasonable and was sufficient but not greater than necessary to comply with the statutory purposes of sentencing. This timely appeal follows.

First, we disagree with Romo-Villalobos's argument that the district court erred in imposing a 16-level enhancement for a prior conviction of a crime of violence. Under U.S.S.G. § 2L1.2(b)(1)(A)(ii), a defendant receives a 16-level enhancement if his conviction has any criminal history points and if he was previously "deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." In pertinent part, a "crime of violence" under this guideline means any "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (the "elements clause"). To determine whether a prior conviction is a qualifying offense for sentencing enhancement purposes, we typically apply a categorical approach. Palomino Garcia, 606 F.3d at 1328. That is, we look only at the fact of conviction and the statutory definition of the prior offense. Id. at 1336.

The elements clause at issue here is the same as the elements clauses of the Armed Career Criminal Act of 1984 ("ACCA") and the career-offender guidelines.

4

Specifically, the ACCA provides a 15-year mandatory minimum sentence for any convicted felon who possesses a firearm or ammunition after having been convicted of three violent felonies or serious drug offenses, 18 U.S.C. § 924(e)(1), and defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another," id. § 924(e)(2)(B)(i). Similarly, the career-offender guidelines provide for an enhanced sentence for any convicted felon with three convictions for crimes of violence or controlled substance offenses, U.S.S.G. § 4B1.1(a)-(b), and define "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1). Consequently, cases dealing with the elements clauses of the ACCA and the career offender guidelines are instructive in this case. Cf. United States v. Lockley, 632 F.3d 1238, 1241 (11th Cir. 2011).

In Johnson v. United States, 130 S. Ct. 1265 (2010), the Supreme Court recently instructed that the type of "physical force" required under the ACCA's elements clause is "violent force -- that is, force capable of causing physical pain or injury to another person." Id. at 1271 (holding that simple battery -- the actual

5

and intentional touching of another -- does not constitute a predicate offense because the ACCA requires "violent force," not merely offensive contact). It further held that while the meaning of "physical force" is a question of federal law, not state law, a federal court is bound by the state supreme court's interpretation of the elements of the underlying state statute at issue. Id. at 1269.[1]

Florida Statute § 843.01 provides in pertinent part: "Whoever knowingly and willfully resists, obstructs, or opposes any officer . . . in the lawful execution of any legal duty, <u>by offering or doing violence</u> to the person of such officer . . . is guilty of a felony of the third degree . . . ." Id. (emphasis added). As for the nature of the force required to sustain a conviction under § 843.01, Florida's appellate courts have held that "violence is a necessary element of the offense." Rawlings v. State, 976 So. 2d 1179, 1181 (Fla. 5th DCA 2008); see also Walker v. State, 965 So. 2d 1281, 1284 (Fla. 2d DCA 2007) ("One of the elements of resisting arrest with violence under section 843.01 is either offering to do violence or actually doing it."). Moreover, Florida's courts have held that "doing violence"

---

[1]    When the state supreme court has not definitively determined a point of state law, we are bound to adhere to decisions of the state's intermediate courts absent some indication that the state supreme court would hold otherwise. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996).

in this context "plainly involves the use . . . of physical force or violence." Harris v. State, 5 So. 3d 750, 751 (Fla. 1st DCA 2009) (quotation omitted).[2]

While Johnson proscribes us from relying on state case law to determine whether a crime requires "violent force," it expressly directs us to look to state cases to determine the elements of the state offense. 130 S. Ct. at 1269. So, even though Rawlings, Walker and Harris analyzed whether § 843.01 qualifies as a violent crime under the state sentencing scheme, we are permitted -- in fact, required -- to rely on these same state cases when they describe the elements of the crime, no matter the context. Thus, because Florida's courts have concluded that violence is a necessary element of § 843.01, we too conclude that it constitutes a "crime of violence" for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii).

Romo-Villalobos claims, nevertheless, that Florida's courts have held that the element of violence in § 843.01 can be satisfied by de minimus force, but we are unpersuaded. For starters, in State v. Green, 400 So. 2d 1322 (Fla. 5th DCA 1981), the defendant had moved pretrial to dismiss the charge on the ground that

---

[2]     Thus, although Johnson held that the Florida crime of felony battery, which required "proof of only the slightest unwanted physical touch," could not categorically be considered a "violent felony" under the ACCA's elements clause, 130 S. Ct. at 1269, the Florida crime of resisting an officer with violence significantly differs from the Florida crime of battery on a law enforcement officer. In United States v. Williams, 609 F.3d 1168 (11th Cir. 2010), we distinguished the two crimes, recognizing that resisting an officer with violence "requires proof of conduct or attempted conduct involving threatened or actual physical force with violence." Id. at 1169 n.1.

7

he had merely "wiggled and struggled" against officers attempting to arrest him, forcing the officers to place him in a chokehold. Id. at 1323. In reversing the trial court's order of dismissal, the appellate court did not suggest that minimal unwanted physical contact would be sufficient; rather, the court emphasized the "ambiguity" of the defendant's description of his conduct and said that whether the defendant's actions "constitute[d] 'violence'" within the meaning of Fla. Stat. § 843.01 was an issue of fact for the jury to decide. Id. at 1323-24. In so holding, it stressed that it was construing the evidence in a light "most favorable to" the state, and that inferences were "resolved against the defendant." Id. at 1324. Given the posture in which it was viewing the case, and its repeated references to this posture, we cannot conclude, contrary to Romo-Villalobos's claim, that de minimis force is sufficient to establish violence in § 843.01.

Similarly, in Wright v. State, 681 So. 2d 852 (Fla. 5th DCA 1996), an officer repeatedly attempted to arrest the defendant, but the defendant "pushed and fought him off." Id. at 853. Another officer "eventually tackled" the defendant and "sat on his back," but had difficulty handcuffing the defendant. Id. The officer had to resort to "a 'hog-tie position,' completely cutting off the defendant's breathing" because he "was struggling, kicking, and flailing his arms and legs." Id. Although the defendant "denied . . . hitting, kicking or resisting the officers

8

with violence," the court held that "the state was not required to prove that [the defendant] actually struck either officer," because the evidence was "sufficient to show that he offered to do violence to the officers within the meaning of [the statute]." Id. at 853-54 (emphasis added). Wright, therefore, involved a defendant's attempt to employ physical force -- by pushing, struggling, kicking and flailing arms and legs -- that undeniably would have been "capable of causing physical pain or injury to another person," Johnson, 130 S. Ct. at 1271.

Romo-Villalobos also argues that § 843.01 cannot involve a "crime of violence" because it only requires a mens rea of recklessness, which we have held "does not satisfy the 'use of physical force' requirement under § 2L1.2's definition of 'crime of violence.'" Palomino Garcia, 606 F.3d at 1336. He relies on the Florida Supreme Court's holding in Frey v. State, 708 So. 2d 918 (Fla. 2009), that resisting an officer with violence does not require a specific intent to commit the offense. Id. at 920. In Frey, the Florida Supreme Court considered "whether resisting arrest with violence is a general intent or specific intent crime" in order to determine whether a defendant's requested instruction on a voluntary intoxication defense should have been given. 708 So. 2d at 919-20. The Florida Supreme Court held that "[t]he statute's plain language reveals that no heightened or particularized, i.e., no specific, intent is required for the commission of this

9

crime, only a general intent to 'knowingly and willfully' impede an officer in the performance of his or her duties." Id. at 920.[3]

However, the Florida Supreme Court has never equated this general intent crime with recklessness.[4] Moreover, while recklessness crimes do not satisfy the "crime of violence" provision, Palomino Garcia, 606 F.3d at 1336, neither this Court nor the Supreme Court has said anything about general intent crimes, which is what we have here. Indeed, Florida's courts have spoken broadly about "general intent" crimes in this way:

---

[3]     Romo-Villalobos's argument that no intent is required for the "offering or doing violence" element of the crime runs directly contrary to the language of Frey, which held that the entire crime is one of general intent. Indeed, the court specifically noted that it was answering "whether resisting arrest with violence is a general intent or specific intent crime." 708 So. 2d at 919-20. At no point did the Florida Supreme Court say that the statute required no general intent, or that it in essence created strict liability for the crime.

[4]     The authorities that Romo-Villalobos provides for the proposition that general intent crimes only require recklessness are unpersuasive. He first relies on a law review citation in a non-precedential concurring-dissenting opinion in Frey, 708 So. 2d at 921 (Anstead, J., concurring in part and dissenting in part), which clearly does not establish binding Florida precedent. He also relies on a case discussing the general intent required for a particular, and different, crime -- aggravated assault -- and has not given us any reason to conclude that this definition would apply to the crime of resisting an officer with violence. See DuPree v. State, 310 So. 2d 396, 399 (Fla. 2d DCA 1975) ("[T]he element of general intent in aggravated assault may be satisfied by proof of wilful and reckless disregard of the safety of others."). Lastly, as for his reliance on Black's Law Dictionary, its definition of "general intent crime" makes no reference to recklessness; and while its definition of "general intent" says that it "usu[ally] takes the form of recklessness (involving actual awareness of a risk and the culpable taking of that risk) or negligence (involving blameworthy inadvertence)," this definition notably uses the word "usually." Moreover, this definition directly contradicts the only definition of "general intent" we could find in Florida case law, as discussed infra.

10

A "general intent" statute is one that prohibits either a specific voluntary act or something that is substantially certain to result from the act (e.g., damage to a building is the natural result of the act of setting a building afire). A person's subjective intent to cause the particular result is irrelevant to general intent crimes because the law ascribes to him a presumption that he intended such a result. . . . Thus, <u>in general intent statutes words such as "willfully" or "intentionally," without more, indicate only that the person must have intended to do the act and serve to distinguish that conduct from accidental (noncriminal) behavior or strict liability crimes</u>. . . .

<u>Hentz v. State</u>, 62 So. 3d 1184, 1190 (Fla. 4th DCA 2011) (quotation omitted; emphasis added). In other words, Florida case law instructs that general intent crimes -- of which § 843.01 is one -- typically require some form of "intent" and are distinguishable from "accidental" or "strict liability" crimes. As a result, the underpinning of our decision in <u>Palomino Garcia</u> -- that crimes requiring recklessness fail to satisfy the "crime of violence" definition because recklessness is "more akin to negligence," "cannot be said to require the <u>intentional</u> use of force," and would "seem to include" accidental conduct, 606 F.3d at 1335-36 (quotation omitted) -- does not apply here.[5] Because Florida's general intent crimes plainly require something more than recklessness, these kinds of crimes are not exempted from the "crime of violence" definition.

---

[5]    In <u>Palomino Garcia</u>, we held that the Arizona crime of aggravated assault on a law enforcement officer was not a "crime of violence," because, unlike the Florida resisting-with-violence statute, the Arizona assault statute expressly permitted a conviction for "reckless[]" conduct that resulted in physical injury. 606 F.3d at 1332.

11

Accordingly, as we held in United States v. Jones, 400 F. App'x 462 (11th Cir. 2010) (unpublished), cert. denied, 131 S. Ct. 2128 (2011), a conviction under Florida Statute § 843.01 "is sufficient for liability under the first prong of the ACCA, 18 U.S.C. § 924(e)(2)(B)(i)," id. at 464 n.4, and therefore constitutes a crime of violence for purposes of the elements clause of U.S.S.G. § 2L1.2(b)(1)(A)(ii). The district court did not err in imposing a 16-level enhancement for a prior conviction of a crime of violence, based on Romo-Villalobos's resisting an officer with violence offense.

Finally, we remain unpersuaded by Romo-Villalobos's argument that his 37-month sentence was unreasonable because the district court failed to grant him a downward variance. We have held that a district court is not required to depart from the applicable guidelines range based on the availability of fast-track departures in only some districts. United States v. Vega-Castillo, 540 F.3d 1235, 1238 (11th Cir. 2008). In reaching this conclusion, we explained that any disparities created by fast-track programs do not fall within the scope of the 18 U.S.C. § 3553(a) factors a district court considers in sentencing. Id. "Under the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court en banc or by the Supreme Court." Id. at 1236 (quotation omitted). Since we have held that arguments based on sentencing

12

disparities created by fast-track programs fail, we are bound to conclude that Romo-Villalobos's argument based on such reasoning fails.

But in any event, even if we were to reconsider our prior precedent, Romo-Villalobos would not qualify for the fast-track program. Pursuant to U.S.S.G. § 5K3.1, "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides." At the time of Romo-Villalobos's sentencing, the Attorney General's guidance on fast-track programs provided that they were not available for any case involving an offense designated as a crime of violence, and furthermore, required a defendant to enter into a written plea agreement including an agreement to the factual basis of the offense conduct, a waiver of the pretrial motions described in Fed. R. Crim. P. 12(b)(3), a waiver of appeal rights, and a waiver of the opportunity to seek collateral relief under 28 U.S.C. § 2255 on any basis other than ineffective assistance of counsel. See United States v. Arevalo-Juarez, 464 F.3d 1246, 1248 n.2 (11th Cir. 2006).

Because Romo-Villalobos has a prior conviction for a crime of violence (resisting an officer with violence) and because he did not enter into a written plea agreement -- two requirements by the Attorney General for fast-track programs --

13

Romo-Villalobos did not meet the Attorney General's requirements for a fast-track program. Therefore, he would not have been entitled to fast-track relief even if the Middle District of Florida were to have this kind of program. See United States v. Vega-Castillo, 548 F.3d 980, 981-82 (11th Cir. 2008) (denying petition for rehearing en banc) (Carnes, J., concurring) ("If we are going to take a case en banc to reconsider our . . . precedents in light of the Kimbrough decision, it needs to be one where . . . there is no apparent reason why the defendant would not have been offered the benefits of an early disposition program if he had been in a district with that kind of program."). Accordingly, the district court did not err in failing to grant Romo-Villalobos a variance, and we affirm.

**AFFIRMED.**