[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-10278
Non-Argument Calendar

————————————————

D.C. Docket No. 8:15-cr-00300-CEH-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TASMINE SHAWAUN BOATWRIGHT,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(November 1, 2017)

Before HULL, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Tasmine Boatwright appeals his conviction and 70-month sentence of imprisonment after pleading guilty to one count of possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Boatwright raises three issues on appeal:  (1) whether § 922(g), both facially and as applied to his conduct, exceeds Congress's authority under the Commerce Clause of the United States Constitution; (2) whether his two prior convictions for aggravated battery under Fla. Stat. § 784.045 qualify as "crimes of violence" under the Sentencing Guidelines; and (3) whether the district court plainly erred by considering his rehabilitative needs in crafting his 70-month sentence.  After careful consideration, we affirm the district court in all respects.

## I.

A federal grand jury returned an indictment charging Boatwright with one count of possessing a firearm and ammunition after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).  Boatwright pled guilty without the benefit of a plea agreement, admitting that he had possessed the firearm and ammunition "in or affecting interstate commerce."

Before sentencing, a probation officer prepared Boatwright's presentence investigation report ("PSR") using the 2016 version of the Sentencing Guidelines Manual.  Boatwright received an enhanced base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) because he had two prior felony convictions for "crimes of violence"—specifically two aggravated-battery convictions under Fla. Stat. § 784.045.  Following a series of adjustments unrelated to the issues on appeal,

2

Boatwright's total offense level was 23. That total offense level, combined with a criminal history category of V, established a guideline range of 84 to 105 months of imprisonment. Boatwright objected to the § 2K2.1(a)(2) enhancement. He also filed a detailed sentencing memorandum.

At sentencing in January 2017, the district court overruled Boatwright's objections and concluded that his aggravated-battery convictions qualified as crimes of violence under this Court's precedent. The court therefore adopted the PSR's recommended guideline range of 84 to 105 months of imprisonment. The parties then offered their respective views on an appropriate sentence.

Defense counsel argued that Boatwright, who was 23 years old at the time of sentencing, was not the danger to society that the PSR made him out to be. Counsel contended that a sentence below the guideline range was appropriate because Boatwright had experienced a horrendous childhood, he was young, he wanted to be a good father to his one-year-old daughter, and he was already serving state sentences in connection with the conduct underlying the § 922(g) offense. Counsel asked the court to impose a sentence that ran concurrent to and ended at the same time as his state sentences, so that he could get out of custody as soon as possible and receive counseling and treatment while on supervised release. Boatwright was expected to be released from his state sentences in August 2020.

Boatwright personally addressed the court and apologized for his conduct. He explained that, in the past, he had served prior criminal sentences with no intent to change his lifestyle, but after his daughter was born, he found motivation to overcome his rough upbringing and change his behavior. He said that he wanted to be a good father and role model for his daughter.

The government acknowledged Boatwright's extremely difficult upbringing but emphasized the need to protect the public in light of his violent criminal history. The government opposed Boatwright's requested sentence, stating,

> [Defense counsel is] essentially asking the Court to sentence him to three-and-a-half years[,] which is cutting the guideline range in half. That will mean that he would go to Florida Department of Corrections, his mental health conditions would remain untreated. He would not get any vocational training. He would not get any sort of additional education training, and he'd come out hoping to do better and in no way equipped to do anything other than what he's already done.

Continuing in the same vein, the government elaborated,

> I don't know if 84 months up to the max guideline range, I don't know if that's justice. I think his criminal history probably says it is, but in looking at his personal characteristics, I think what's most important for Mr. Boatwright is that he get some help, that he's not allowed to sit in Florida Department of Corrections and the Bureau of Prisons and just learn to be more violent and not get treatment for his mental health issues and his drug issues.
>
> I think that a sentence of essentially 100 percent concurrent time with the State, meaning . . . no Federal sentence past the 2020 release date, . . . doesn't serve him and it certainly doesn't protect the community.

4

I'm asking for a concurrent sentence. . . . [B]ut I'm asking that this Court sentence him to a period in the Bureau of Prisons past the point that he's going to get out of the Florida Department of Corrections so that we can assure that he gets some help, that he gets those programs and some training before he's released back.

The government suggested that "probably at least an additional two years in Bureau of Prisons would give him some time to get some training, to get involved in some programs and to help himself so that when he comes out he can be better and he doesn't end up in the cycle of incarceration like his father is."

In pronouncing Boatwright's sentence, the district court acknowledged Boatwright's "horrendous" upbringing and its effects on his conduct, including his felt need to carry a firearm for protection. The court also noted his lack of supervision and role models and the fact that some of his criminal history was simply due to mistakes and immaturity. But the court also agreed with the government that Boatwright's "mistakes harmed others" and that the sentence needed to protect the public. While noting that Boatwright had demonstrated "absolutely no respect for the law" in the past, the court found "some promise and hope" for him based on his comments about his daughter and his desire to be a good father and role model.

Addressing the sentence to be imposed, the district court stated,

I do agree that the guidelines range in this case is substantively unreasonable. I'm not going to impose a sentence within the guidelines range but I am going to impose a sentence greater than the time that you have remaining on your State court charges, because I

5

do agree with [the government] that you need an opportunity. At least in the Bureau of Prisons I know that you can receive some of the treatment that you need such that when you are released you will come out a better person and able to be a father to your daughter, the daughter that as I recall from review you've never even had a chance to hold, and so it is my quest as I sit here today to craft a sentence that provides you that opportunity.

The district court imposed a sentence of 70 months of imprisonment, stating that it was "sufficient but not greater than necessary to comply with the statutory purposes of sentencing." The explained the basis for the sentence as follows:

In your case it allows you an opportunity once you complete your State sentence to hopefully get the treatment needed to make you a better person because you are still a young man. You will get a chance to come out and hopefully become a productive member of society.

In so doing, I have considered the 3553(a) factors, in particular the nature and circumstances of the offense and the history and characteristics of the Defendant. We talked about your personal characteristics. We've talked about your desire now to improve yourself and be a better person for your daughter. And as I have indicated before, based upon your history, you grew up in some horrendous circumstances that no doubt attributed to the person that you are, that you have untreated mental health issues and basically a need for some counseling.

The Court, however, in fashioning the sentence was mindful to impose a sentence that protects the public from further crimes of you and I am hopeful that when you are released you will at least heed the words of your friends and come out a better person who is able to find gainful employment and be the respectable citizen of this community.

In addition, the Court is going to run your sentence concurrent with your State court sentences, such that you will get time for your period of incarceration here at the same time you're receiving time for your State court sentence.

6

After imposition of sentence, defense counsel raised no objection apart from the § 2K2.1(a)(2) issue.  This appeal followed.

## II.

Boatwright argues that 18 U.S.C. § 922(g) is unconstitutional both facially and as applied to his conduct because the statute exceeds Congress's authority under the Commerce Clause of the United States Constitution.  He concedes, however, that his arguments are foreclosed by binding precedent.[1]

"We have repeatedly held that Section 922(g)(1) is not a facially unconstitutional exercise of Congress's power under the Commerce Clause because it contains an express jurisdictional requirement."  *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011); *see also United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010); *United States v. Scott*, 263 F.3d 1270, 1273–74 (11th Cir. 2001); *United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996). Specifically, § 922(g)(1) makes it unlawful for a convicted felon to, among other things, "possess *in or affecting commerce*, any firearm or ammunition."  18 U.S.C. § 922(g)(1) (emphasis added).  Accordingly, we reject Boatwright's challenge to the facial constitutionality of § 922(g).

---

[1] "We review the constitutionality of a statute *de novo*."  *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011).

7

Boatwright also maintains that § 922(g) is unconstitutional as applied to purely intrastate possession of a firearm that does not substantially affect interstate commerce. Based on that interpretation, he contends that his guilty plea was not made knowingly and voluntarily because he was not advised that the government was required to prove a substantial effect on interstate commerce.

Here, the district court properly advised Boatwright of the elements of § 922(g) during his plea colloquy because the government was not required to prove a "substantial effect" on interstate commerce. We have held that "§ 922(g) only requires that the government prove some 'minimal nexus' to interstate commerce, which it may accomplish by 'demonstrat[ing] that the firearm possessed traveled in interstate commerce.'" *Wright*, 607 F.3d at 715 (quoting *Scott*, 263 F.3d at 1274). Boatwright concedes that the firearm and ammunition he possessed were manufactured outside of the state of Florida and therefore "traveled in interstate commerce." *See id.* Accordingly, § 922(g) is constitutional as applied to his conduct and his guilty plea is valid.

## III.

Boatwright argues that his prior convictions for aggravated battery under Fla. Stat. § 784.045 are not "crimes of violence" under the Sentencing Guidelines. Again, however, Boatwright's challenge is foreclosed by binding precedent.[2]

---

[2] We review *de novo* whether a defendant's prior conviction qualifies as a "crime of

Section 2K2.1 sets out several alternative base offense levels for offenses involving unlawful possession of a firearm. Under § 2K2.1(a)(2), an enhanced base offense level of 24 applies "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2).

A "crime of violence" for purposes of § 2K2.1(a)(2) is any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause"); or (2) is one of a list of enumerated offenses, including aggravated assault. U.S.S.G. § 4B1.2(a) (Nov. 2016); *see* U.S.S.G. § 2K2.1 cmt. n.1 (incorporating § 4B1.2(a)'s definition of "crime of violence").

To determine whether a prior conviction qualifies as a crime of violence, we generally apply the "categorical approach," looking no further than the statute of conviction. *United States v. Estrella*, 758 F.3d 1239, 1244 (11th Cir. 2014). When a statute is divisible, meaning that it sets out multiple, alternative elements, we may apply a "modified" categorical approach to determine which alternative version of the elements the defendant was convicted of. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016); *Descamps v. United States*, 133 S. Ct. 2276, 2285

violence" under the Sentencing Guidelines. *United States v. Romo-Villalobos*, 674 F.3d 1246, 1247 (11th Cir. 2012).

(2013).   The modified approach allows courts to look beyond the statute of conviction to a limited class of documents from the record of conviction.  *See Mathis*, 136 S. Ct. at 2249.

In applying § 2K2.1(a)(2), the district court relied on Boatwright's two prior convictions for aggravated battery under Fla. Stat. § 784.045.  In relevant part, a person commits aggravated battery under § 784.045 by committing a battery (1) that "intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement"; or (2) while using a deadly weapon.[3]   Fla. Stat. § 784.045(1)(a).

We held in *Turner v. Warden, Coleman FCI (Medium)* that a conviction under § 785.045 qualifies as a violent felony under the "elements clause" of the Armed Career Criminal Act ("ACCA") when the offense involves either of the two alternatives listed above—"the intentional or knowing causation of great bodily harm" or "the use of a deadly weapon."  709 F.3d 1328, 1341 (11th Cir. 2013), *abrogated on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015). "Either way," according to *Turner*, "the crime has as an element the use, attempted use, or threatened use of physical force . . . ."  *Id.* (internal quotation marks omitted).  That holding likewise applies to the "elements" clause of § 4B1.2(a)(1),

---

[3] Section 784.045 also provides that a person commits aggravated battery by committing a battery upon a victim whom the offender knows to be pregnant.  Fla. Stat. § 784.045(1)(b). However, the parties agree that Boatwright's conviction was for one of the two alternatives listed above, so we do not consider this third alternative.

10

because that clause is identical to the elements clause of the ACCA. *See United States v. Fritts*, 841 F.3d 937, 940 (11th Cir. 2016).

Boatwright maintains that *Turner* was wrongly decided and has been abrogated by intervening decisions of the Supreme Court like *Descamps*. But we recently confirmed that *Turner* remains binding "even if [it] is flawed." *United States v. Golden*, 854 F.3d 1256, 1256–57 (11th Cir. 2017), *cert. denied*, 2017 WL 2855232 (Oct. 2, 2017). Because *Turner* is still binding precedent, the district court properly determined that Boatwright's aggravated-battery convictions qualified as crimes of violence. *See* U.S.S.G. § 4B1.2(a).

## IV.

Finally, Boatwright argues that his sentence is procedurally and substantively unreasonable because the district court improperly considered rehabilitation in imposing a term of imprisonment.

We ordinarily review the procedural reasonableness of a sentence under a deferential abuse-of-discretion standard of review. *Gall v. United States*, 552 U.S. 38, 51 (2007). But because Boatwright did not object to the procedural reasonableness of his sentence at the time of sentencing, we review for plain error only. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014).

Plain-error review is governed by Rule 52(b), Fed. R. Crim. P., which states, "A plain error that affects substantial rights may be considered even though it was

not brought to the court's attention."   Fed. R. Crim. P. 52(b).   An appellant challenging a forfeited error therefore must show that (1) there was an error; (2) the error was "plain—that is to say, clear or obvious"; and (3) the error affected the defendant's substantial rights, which ordinarily means a reasonable probability that the error affected the outcome.  *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016).   When these three factors are met, we may exercise our discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings.  *Id.*

In *Tapia v. United States*, the Supreme Court held that a sentencing court may not impose or lengthen a prison term in order to promote an offender's rehabilitation.  564 U.S. 319, 332, 335 (2011); *see* 18 U.S.C. § 3582(a) (instructing sentencing courts to "recognize[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation").  In *Vandergrift*, we held that "*Tapia* error occurs where the district court *considers* rehabilitation when crafting a sentence of imprisonment."  754 F.3d at 1310 (emphasis in original).  We declined "to limit *Tapia* to situations where the district court either 1) specifically tailors the length of a defendant's sentence to permit completion of a rehabilitation program or 2) makes rehabilitation the 'dominant' factor in the sentencing court's calculus." *Id.*  Thus, "a court errs by relying on or considering rehabilitation in any way when

12

sentencing a defendant to prison," no matter how dominant the factor was to the court's analysis. *Id.* at 131.

That is not to say that sentencing courts are prohibited from considering or discussing rehabilitation altogether. "A court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." *Tapia*, 564 U.S. at 334. Indeed, these are "important matters" that the court may properly address. *Id.* But it is error to consider "prison's rehabilitative benefits . . . in the course" of crafting a sentence of imprisonment. *Vandergrift*, 754 F.3d at 1311–12.

Here, the district court committed an error that was "plain" under *Vandergrift*. The court expressly considered Boatwright's rehabilitative needs in crafting the sentence of imprisonment. Noting that Boatwright had "untreated mental health issues and basically a need for some counseling," the court explained that a federal sentence in excess of his state sentences was appropriate because he needed "an opportunity" to become a better person and he could receive some of the treatment he needed in federal prison. The court elaborated that the 70-month sentence gave him "an opportunity once [he] complete[d] [his] state sentence to hopefully get the treatment needed to make [him] a better person." These statements show that the district court considered prison's rehabilitative benefits in the course of crafting the sentence. *See id.* at 1310–11.

13

The critical question is whether the error affected Boatwright's substantial rights. *See id.* at 1312. Boatwright bears the burden of showing a reasonable probability that the error affected the outcome of the proceedings. *United States v. Rodriguez*, 398 F.3d 1291, 1298–99 (11th Cir. 2005). The defendant's burden is "anything but easy." *Id.* at 1299. And in some cases—"[w]here errors could have cut either way and uncertainty exists"—it will be decisive. *Id.* at 1300 ("[I]f it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses."). Here, Boatwright has not met his burden.

In *Vandergrift*, we held that a defendant had not shown that his substantial rights were affected where the sentencing transcript reflected that his "rehabilitative needs clearly constituted only a minor fragment of the court's reasoning." 754 F.3d at 1312 (quotation marks omitted). Likewise, in *United States v. Alberts*, we held that a defendant had not shown that his substantial rights were impacted where "the sentencing transcript shows that rehabilitation was merely an ancillary concern." 859 F.3d 979, 986 (11th Cir. 2017).

On this record, Boatwright has not shown a reasonable probability of a different outcome but for the error. *See Rodriguez*, 398 F.3d at 1298–99. True, the court mentioned concerns that could be viewed as rehabilitative in nature in imposing its sentence, but the court explained that the § 3553(a) factors driving its

14

sentence included the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to protect the public.  The court's discussion makes clear that it reasoned that each of these factors established the need for counseling and treatment opportunities and that provision of these opportunities would protect the public.  Specifically, the court contemplated that the sentence would protect the public by making it less likely that Boatwright would again participate in similar conduct and more likely that Boatwright would be "able to find gainful employment and be the respectable citizen of this community" and be a "productive member of society."

And most significantly, nothing in the record suggests that the court would have imposed a lighter sentence had it not mentioned opportunities that it hoped would positively affect Boatwright (and therefore the public safety).  On the contrary, it appears that the very reason the court imposed a sentence 14 months below the low end of the guideline range was based on the premise that programs available to Boatwright in federal prison would allow Boatwright not to be a danger to the public when he was released from imprisonment.

Under these circumstances, we cannot conclude that the district court's error may reasonably be viewed as having "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Olano*, 566 U.S. 129, 135 (2009).  So we decline to exercise our discretion to vacate the sentence.

15

## V.

For these reasons, we affirm the district court in all respects.

**AFFIRMED.**