[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 16-17389
Non-Argument Calendar

————————————————

D.C. Docket No. 8:15-cr-00016-VMC-JSS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT BAEZ,
a.k.a. Roberto Baez,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(December 28, 2017)

Before HULL, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

After pleading guilty, Robert Baez appeals his convictions and total 84 month sentence for two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On appeal, Baez argues: (1) § 922(g) is unconstitutional, facially and as applied to him, and that his plea colloquy was constitutionally deficient, both of which render his convictions invalid; (2) the district court erred in applying an increased base offense level because his two prior convictions for resisting an officer with violence do not constitute crimes of violence under the Sentencing Guidelines; and (3) the district court imposed a sentence that was both procedurally and substantively unreasonable.  After review, we affirm.

## I.    BAEZ'S § 922(g) CONVICTIONS

### A.    Offense Conduct

On July 29, 2014, an agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives learned from a confidential source that Baez, a convicted felon, had previously made arrangements to sell firearms from the trunk of his car.  The agent arranged a meeting with Baez to purchase two firearms furnished by Baez's associate, Michael Sparacino.

A few days later, on August 1, the confidential source and an undercover officer met with Baez and Sparacino at a parking lot in St. Petersburg, Florida and purchased two firearms from Sparacino.  Baez then placed the firearms in the

undercover officer's car, and the undercover officer and Sparacino discussed the purchase of additional firearms to take place the following week.

On August 6, 2014, Baez called the undercover officer several times, stating that he and Sparacino had more firearms for sale. Baez also texted the undercover officer a photograph of himself holding a pistol grip shotgun. The undercover officer agreed to meet with Baez and Sparacino at a pawn shop in Seminole, Florida that was owned by Sparacino.

Later that day, the undercover officer met with Baez and Sparacino at the pawn shop. As Baez and Sparacino took three firearms out of a box behind the counter, Baez handled and possessed the firearms. The undercover officer purchased all three firearms.

It is undisputed that Baez did not receive any payment from the firearm sales, and Baez maintained that he was merely helping his friend, Sparacino. It is also undisputed that four of the five firearms sold to the undercover officer were manufactured outside of Florida.

Baez was charged in an indictment with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count One charged Baez's possession of two firearms during the August 1, 2014 firearms sale, and Count Two charged Baez's possession of two firearms during

3

the August 6, 2014 firearms sale.  Baez pled guilty to both counts without a written plea agreement.

**B.      Baez's Challenges on Appeal**

As to his convictions, Baez argues that § 922(g) is facially unconstitutional because it exceeds Congress's authority under the Commerce Clause and that § 922(g) is unconstitutional as applied to him because the fact that the firearms he possessed in Florida were manufactured outside Florida is insufficient to satisfy the interstate commerce jurisdictional requirement.

Both of Baez's constitutional challenges to § 922(g) are foreclosed by this Court's prior precedent expressly rejecting such challenges.  See United States v. Wright, 607 F.3d 708, 715 (11th Cir. 2010).  In Wright, this Court rejected the defendant's facial challenge, citing prior cases holding that § 922(g) is not an unconstitutional exercise of Congress's power under the Commerce Clause.  Id. (citing United States v. Nichols, 124 F.3d 1265, 1266 (11th Cir. 1997) and United States v. McAllister, 77 F.3d 387, 389 (11th Cir. 1996)).

The Wright Court also rejected the defendant's as-applied challenge, concluding that the fact that the firearms at issue were manufactured outside of Florida and then were discovered in the defendant's possession in Florida meant that they necessarily traveled in interstate commerce, which was sufficient to satisfy the constitutional requirement of a "minimal nexus" to interstate commerce.

4

Id. at 715-16.  We are bound by these precedents, which have not been overruled by this Court sitting en banc or by the Supreme Court.  See United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008).

Here, Baez has never disputed that the four firearms he pled guilty to possessing were manufactured outside the state of Florida.  Further, because "§ 922(g) only requires that the government prove some 'minimal nexus' to interstate commerce," Wright, 607 F.3d at 715, there is no merit to Baez's claim that the district court improperly advised him of the elements of a § 922(g) offense during his plea colloquy.  Accordingly, § 922(g) is constitutional both facially and as applied to Baez's conduct, and Baez's guilty plea is valid.

## II.  BAEZ'S SENTENCE

### A.    Base Offense Level Under U.S.S.G. § 2K2.1

Under U.S.S.G. § 2K2.1(a)(2), a defendant's base offense level is 24 if the defendant committed the instant offense after sustaining at least two felony convictions for crimes of violence.  A "crime of violence" for § 2K2.1 purposes is defined in § 4B1.2(a), the career offender provision, and includes "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. §§ 2K2.1, cmt. n. 1, 4B1.2(a)(1). This definition, referred to as the elements clause, is identical to the elements

5

clause definition of "crime of violence" in U.S.S.G. § 2L1.2 and the elements

clause definition of "violent felony" in the Armed Career Criminal Act, 18 U.S.C.

§ 924(e)(2)(B)(i).  For that reason, cases addressing the ACCA are applicable to

and instructive in cases addressing the elements clauses of the Sentencing

Guidelines.  United States v. Romo-Villalobos, 674 F.3d 1246, 1248 (11th Cir.

2012).

At sentencing, the district court, over Baez's objection, set Baez's base

offense level at 24, pursuant to U.S.S.G. § 2K2.1(a)(2), based on Baez's two

separate Florida felony convictions for resisting an officer with violence in 2006.

A person commits the Florida felony offense of resisting an officer with violence if

he "knowingly and willfully resists, obstructs, or opposes any officer . . . in the

lawful execution of any legal duty, by offering or doing violence to the person of

such officer . . . ."  Fla. Stat. § 843.01.

It is well-settled in this Court that, applying the categorical approach, Florida

Statutes § 843.01 has as an element the use, attempted use, or threatened use of

physical force against the person of another.  See Romo-Villalobos, 674 F.3d at

1249, 1251 (concluding that because "violence is a necessary element," a § 843.01

offense constitutes a crime of violence under U.S.S.G. § 2L1.2's identical elements

clause).  This Court reaffirmed that conclusion in United States v. Hill, which held

that the district court erred in finding that a prior Florida conviction for resisting an

6

officer with violence did not constitute a violent felony under the ACCA. Hill, 799 F.3d 1318, 1322-23 (11th Cir. 2015).

Baez cites Moncrieffe v. Holder, 569 U.S. 184, 133 S. Ct. 1678 (2013), and Descamps v. United States, 570 U.S. 254, 133 S Ct. 2276 (2013), and argues that after these Supreme Court decisions, his Florida resisting an officer with violence conviction does not categorically qualify as a crime of violence. But, neither Moncrieffe nor Descamps addressed whether a Florida conviction under § 843.01 is a crime of violence, much less overruled this Court's decision in Romo-Villalobos. See Moncrieffe, 570 U.S. at 190-96, 133 S. Ct. at 1684-88 (addressing whether a Georgia marijuana possession conviction qualified as "illicit trafficking in a controlled substance" under the Immigration and Nationality Act); Descamps, 570 U.S. at ___, 133 S. Ct. at 2282-83 (addressing whether a California burglary conviction qualified as generic burglary under the ACCA's enumerated offenses clause). Perhaps more importantly, this Court decided Hill after Moncrieffe and Descamps, which puts paid to Baez's claim that the proper application of the categorical approach would lead to a different result. Thus, Baez's argument that his Florida convictions under § 843.01 do not qualify as crimes of violence under § 4B1.2(a)'s elements clause is foreclosed by this Court's binding precedent in Villalobos and Hill. See Archer, 531 F.3d at 1352.

7

### B.    Reasonableness Principles

We review the reasonableness of a sentence for an abuse of discretion using a two-step process.  United States v. Cubero, 754 F.3d 888, 892 (11th Cir. 2014). First, we consider whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the Sentencing Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, choosing a sentence based on clearly erroneous facts, or failing to adequately explain the sentence imposed.  Id.

Second, we examine whether the sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances.[1]  Id.  The party challenging the sentence bears the burden to show it is unreasonable.  United States v. Alvarado, 808 F.3d 474, 496 (11th Cir. 2015).  The weight given to any particular § 3553(a) factor is within the district court's discretion, and this Court will not substitute its judgment for that of the district court.  Id.  We will reverse a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by

---

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks omitted).

**C.      Procedural Reasonableness of Baez's Sentence**

The district court did not impose a procedurally unreasonable sentence. Baez argues that the district court procedurally erred by giving no weight to the testimony of Dr. Valarie McClain, a psychologist who conducted a forensic psychological evaluation of Baez. Dr. McClain testified, among other things, that Baez had been physically abused as a child, had cognitive deficits due to a childhood head injury, had a full-scale IQ score of 69, and was diagnosed with schizoaffective disorder, bipolar type, intellectual development disorder, and neurocognitive disorder. Dr. McClain said that around the time of his offenses, Baez was not stabilized on medication and was self-medicating with alcohol. Dr. McClain opined that, as a result, Baez suffered from reduced mental capacity at the time of his offenses and could not appreciate the wrongfulness of his conduct or conform his behavior to the requirements of the law.

The record contradicts Baez's claim that the district court gave no weight to Dr. McClain's opinions. The district court expressly acknowledged Dr. McClain's testimony, stating that it "listened very intently to what the psychologist had to say" and commenting that "[s]he gave some very compelling testimony." The

9

district court also noted that Baez needed continuing mental health treatment and recommended a facility in which the district court believed Baez would receive such treatment. These statements reflect the district court's consideration of Dr. McClain's testimony and Baez's history of mental health issues.

Baez also argues that the district court procedurally erred by expressly agreeing with the government's argument for a sentence at the low end of the guidelines, which Baez says contained "material incorrect information." Specifically, Baez claims the prosecutor misstated that: (1) Baez sold cocaine after possessing the firearms for which he was charged; and (2) treatment and medication did not deter Baez's criminal conduct.

First, even assuming that these two statements by the prosecutor were incorrect, Baez had the opportunity to address them during the sentencing hearing. At least with regard to the prosecutor's second statement, Baez did in fact do so, arguing that he committed crimes only when he was not in treatment, and that it was not a matter of him choosing not to take medication that he had, but rather of him not having medication at all because he was not being treated. Further, the district court had the presentence investigation report ("PSI"), which showed the dates of Baez's criminal offenses and convictions as well as dates of treatment, and listened to Dr. McClain's testimony regarding the relationship between Baez's treatment and offenses.

Second, we disagree with Baez that the district court relied on or adopted the prosecutor's factual statements in his argument.  Rather, the district court heard extensive arguments from both parties as to the appropriate sentence based on various aggravating and mitigating factors, including Baez's significant criminal history, his history of mental illness and substance abuse, his amenability to mental health treatment and whether treatment was effective in deterring him from engaging in criminal activity, the seriousness of Baez's offense, which involved two separate firearms sales, Baez's role in arranging and facilitating the firearm sales for a friend who owned a pawn shop, and Baez's own fleeting possession of the firearms during the firearm transactions.  The government asked for an 84-month sentence, at the low end of the advisory guidelines range, while Baez asked for a downward variance to a 23-month sentence.

After hearing arguments from both parties, the district court imposed an 84-month sentence, at the low end of the advisory range.  In explaining its decision to deny Baez a downward variance, the district court stated that it agreed with the government's assessment, as follows:

> In essence, I agree with the government here.  I think the challenges [Baez has] had to deal with warrant a sentence at the low end of the guidelines, but it does not warrant a downward variance. He himself stopped taking his medication in the past, and I think that's contributed to some of his problems.  I also look at protecting the public; and given his criminal history here, that's very important to me.

11

I've certainly listened very intently to what the psychologist had to say. She gave some very compelling testimony. And, likewise, [defense counsel], you've given very compelling arguments on behalf of your client, but I just don't see it the way you do. That's just the bottom line. I don't see it the way you do, and I most respectfully disagree with your assessment of it and I agree with the government. That's the bottom line.

We read the district court's explanation to say that it agreed with the government's overall assessment that a downward variance was not appropriate given Baez's criminal history and the need to protect the public, not that the district court agreed with every factual assertion made by the prosecutor in arguing for an 84-month sentence.

To the extent Baez contends that the district court relied on a clearly erroneous fact—that Baez "stopped taking his medication in the past" and that Baez's not taking his medication contributed to his problems—there is ample record support for this fact finding by the district court. Specifically, at Baez's request, the probation officer added to the PSI that Baez advised the probation officer that he was "not taking his psychiatric medications" at the time of his two resisting an officer with violence offenses. Dr. McClain testified that because Baez was not on his medications at the time of those offenses, he was not able to behave appropriately. Dr. McClain further opined that when Baez was not on medication and was self-medicating with alcohol, he posed a higher risk of danger to the community, but that when he was properly medicated, he was a different

12

person and that medication dramatically decreased the risk that Baez would be involved in criminal activity or engage in violent or aggressive behavior. In addition, the PSI stated that during at least one hospitalization in June 2015, Baez refused to take his prescribed medication. Baez did not object to this fact in the PSI or dispute the PSI's factual accuracy at sentencing. In light of these undisputed facts, Baez has not shown that the district court relied on a clearly erroneous fact.

**D.    Substantive Reasonableness of Baez's Sentence**

Likewise, Baez has not shown that his sentence is substantively unreasonable. Baez's 84-month sentence is at the low end of the advisory guidelines range of 84 to 105 months' imprisonment, which is one indication of its reasonableness. See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

While Baez has had serious mental health problems, the district court acted within its sound discretion in placing greater weight on the need to protect the public in light of Baez's criminal history. See United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007). Despite repeated periods of mental health treatment and hospitalization and 16-month inpatient substance abuse treatment, Baez has managed to accrue an extensive criminal history, with 10 adult convictions over a sixteen-year time span. Baez does not dispute that he committed crimes when he was not being treated for his mental illness. Regardless of whether the lack of

13

treatment was a result of Baez's own choice or because of a lack of access, Dr. McClain testified that, without proper treatment, Baez poses a danger to the community.  In short, Baez's treatment history and criminal history show that Baez, regardless of the reason, has found it difficult to maintain the kind of stability through mental health treatment and abstaining from substance abuse that would ensure the public's safety.

To the extent that Baez argues that his 84-month sentence is substantively unreasonable for the same reasons he contends it is procedurally unreasonable, these arguments fail for the reasons discussed above.  The district court did not fail to afford consideration to a relevant factor—Baez's mental health—because it expressly considered that factor.  The district court also did not err in giving significant weight to an improper factor—the government's alleged false statements—because the government's statements were not relied upon by the district court as facts.  Thus, the district court did not abuse its discretion by ignoring a relevant factor or considering an improper factor.

The other reasons Baez argues his sentence is substantively unreasonable— he had only "fleeting" possession of the firearms and had never been incarcerated for more than one year—were also considered by the district court.  The PSI contained information regarding all of Baez's previous sentences.  Both parties acknowledged that Baez's brief possession of the firearms made his case atypical,

but the fact that Baez had arranged the two sales was significant and also made his possession more serious.  The district court was permitted to give more weight to the fact that Baez possessed the firearms on two different occasions and facilitated their sales, and it is not our role to second guess that decision.  See United States v. Snipes, 611 F.3d 855, 872 (11th Cir. 2010).

Under the totality of the circumstances, we cannot say the district court abused its discretion in denying Baez's request for a downward variance.

**AFFIRMED.**

15