[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13128
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-20178-KMW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HUBERT YOUTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 16, 2019)

Before MARCUS, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Hubert Youte appeals his conviction for making a false statement to a U.S.

customs official. He raises arguments about the reasonableness of the search of his

shipboard quarters, the adequacy of his *Miranda* warnings, and the sufficiency of the evidence to convict him. Because we conclude that these arguments fail, we affirm.

Youte, a national of Haiti whose first language is Haitian Creole, was an able seaman on board a freighter docked in Miami. When U.S. customs officials arrived to conduct a routine outbound inspection of the freighter, customs agent Angel Rodriguez remembered Youte from previous inspections and thought his demeanor seemed odd this time. According to Rodriguez's later testimony, Youte looked upset that customs officials were on board. Rodriguez questioned Youte in Youte's cabin in English and had no difficulty conversing. After Youte told Rodriguez that everything in the cabin was his, Rodriguez asked him if he was carrying more than $10,000. Youte said no. When asked how much money he did have, Youte produced about $2,000 from a pillowcase. Asked if he had any more money, Youte produced $42 from his shirt pocket. Asked again, he produced $200 from a pair of jeans lying nearby. Rodriguez then asked three more times if Youte had disclosed all of the money he had, and Youte said yes. Rodriguez and his partner searched Youte's cabin and discovered a Tide detergent box, taped shut with a lot of clear tape. They cut the box open and found it contained $36,930 in cash. Youte immediately began to repeat, "Talk to Jeff," and the officers escorted him off the ship.

2

In the customs office, Youte was interviewed by three agents including Jacque Philippe, who is a native speaker of Haitian Creole but is not trained as a translator. Youte told Philippe that he did not know how to write, that he did not know how to speak English, and that he only spoke Creole. Philippe then read Youte his *Miranda* rights in Creole by extemporaneously translating the English waiver form, since the Creole form was unavailable. Philippe paused several times to ask Youte whether he understood; Youte said he did and marked the waiver form. Youte then agreed to speak with the agents. He told them that he knew that the Tide box contained money and that he was bringing it to Haiti at the request of a former coworker named Jeff, who was flying to Haiti and planned to receive the box from Youte there.

Youte was charged with bulk cash smuggling, 31 U.S.C. § 5332(a), and making a false statement, 18 U.S.C. § 1001(a)(2). Before trial, Youte unsuccessfully moved to suppress the cash and his post-*Miranda* statements. After the government presented its evidence at trial, the district court granted Youte's motion for a judgment of acquittal on the cash smuggling charge, finding that the government had not proved Youte's knowledge of the currency reporting requirement, an essential element of the crime.[1] The jury convicted Youte on the

---

[1] *See* 31 U.S.C. § 5332(a)(1) (requiring "intent to evade a currency reporting requirement under section 5316"). A report is required when a person knowingly transports "monetary instruments

false statement charge. He was sentenced to time served, and he lost his work visa as a result of the conviction. This is Youte's appeal.

Youte first argues that the currency evidence should have been suppressed as the fruit of an unreasonable search. He asserts that the customs officials lacked reasonable suspicion to enter and search his living quarters on board the vessel. We review the denial of a motion to suppress evidence under a mixed standard of review: the district court's findings of fact are reviewed for clear error, while its application of the law is reviewed *de novo*. *United States v. Pierre*, 825 F.3d 1183, 1191 (11th Cir. 2016).

As Youte acknowledges, his position is foreclosed by our precedent in *United States v. Alfaro-Moncada*, 607 F.3d 720 (11th Cir. 2010). In that case we held that, under the border search exception,[2] searches of a crew member's onboard cabin at the U.S. border do not require reasonable suspicion. *Id.* at 728–32. Under our prior panel precedent rule, we are bound by our published decisions that have not been overruled by the Supreme Court or our *en banc* Court. *United*

---

of more than $10,000 at one time . . . from a place in the United States to or through a place outside the United States." 31 U.S.C. § 5316(a)(1)(A).

[2] "[T]he Fourth Amendment's balance of reasonableness is qualitatively different at the international border . . . . Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985).

*States v. Romo-Villalobos*, 674 F.3d 1246, 1251 (11th Cir. 2012). Accordingly, the district court did not err in denying Youte's motion to suppress on these grounds.

Second, Youte argues that his post-*Miranda* statements should have been suppressed because the poorly translated *Miranda* warnings he received were inadequate. Again, we review findings of fact for clear error and conclusions of law *de novo. United States v. Barbour*, 70 F.3d 580, 584 (11th Cir. 1995). We assess the "'totality of the circumstances,' construing the facts in the light most favorable to the party prevailing below." *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

We conclude that the warnings Youte received were adequate under *Miranda*, which announced that, before questioning, an individual must be warned "that he has the right to remain silent," "that anything said can and will be used against the individual in court," "that he has the right to consult with a lawyer and to have the lawyer with him during interrogation," and "that if he is indigent a lawyer will be appointed to represent him." *Miranda v. Arizona*, 384 U.S. 436, 467–68, 469, 471, 473 (1966). The Supreme Court has clarified that *Miranda* requires not a "talismanic incantation" but rather that the warnings "reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (quoting *California v. Prysock*, 453 U.S. 355, 359, 361

5

(1981)) (alterations in original). The warnings given to Youte in Creole met this standard.

Youte argues that he was not adequately warned that his statements could be used against him in court because Philippe translated that part of the warning incompletely. According to the interview transcript and its translation, Philippe said, "*Nan pot bagay ou di nou . . . Nou ka* used *li nan kot, nan tribinal la*," to convey, "Anything you tell us . . . We can use it in court." He did not translate *used* into Creole and he did not specifically say that Youte's statements could be used *against him* in court. We find, however, that neither shortcoming of the translation was fatal to conveying the relevant information, since Youte repeatedly told his interviewers that he understood and never appeared confused or asked for clarification.[3] *Miranda* itself instructs that this part of the warning "is needed in order to make him aware not only of the privilege [against self-incrimination], but also of the consequences of forgoing it." 384 U.S. at 469. Agent Philippe's statement adequately conveyed those consequences.

Youte also argues that he was not adequately warned that he was unconditionally entitled to have a lawyer with him during interrogation. Agent Philippe stated in Creole, "You have the right to contact an attorney before you

---

[3] His understanding may reasonably be explained by the district court's factual finding, not clearly erroneous, that Youte understood some spoken English, as evidenced by Youte's interactions and conversation in English with Rodriguez on board the ship.

make any statements.[4]. . . You have the right to have an attorney present with you while being questioned. . . . If you cannot pay an attorney yourself . . . they will appoint you one before if you need one. [Umm] If you want." We find that any ambiguities or misstatements in Philippe's translation were immediately corrected. If translating "consult" as "contact" was misleading, the "right to have an attorney present with you while being questioned" clarified the statement. And although "if you need" an attorney was improper, it was immediately corrected to "if you want."

Thus, despite the inelegant translation by Agent Philippe, neither of these two requisite components of a *Miranda* warning was lacking. *Cf. United States v. Street*, 472 F.3d 1298, 1311–12 (11th Cir. 2006) (warnings were inadequate where neither how statements might be used nor whether counsel would be appointed were mentioned at all). A suspect's difficulties with English do not preclude the possibility of receiving adequate *Miranda* warnings, especially when he unequivocally states that he understands the rights of which he has been informed. *United States v. Boon San Chong*, 829 F.2d 1572, 1573–74 (11th Cir. 1987) (defendant was able to read rights waiver form in native language and indicated that he understood). Given that the Supreme Court "has not dictated the words in

---

[4] Youte argues that Philippe here corrected himself and said, "After you give us any statements." It is not clear from the transcript, however, that this alteration was meant as a correction. In any case, Philippe's next statement, "You have the right to have an attorney present while being questioned," correctly stated Youte's right to consult with an attorney and have him present with him during interrogation as required by *Miranda*.

7

which the essential information [of the *Miranda* warnings] must be conveyed," *Florida v. Powell*, 559 U.S. 50, 60 (2010), the district court did not err when it concluded that Youte received that essential information.

Finally, Youte argues that the evidence was legally insufficient for the jury to convict him of making a false statement under 18 U.S.C. § 1001(a)(2). We review the denial of a motion for judgment of acquittal on sufficiency of the evidence grounds *de novo*, viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences in favor of the government. *United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013). "The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *Id.* at 1297. We will not overturn a jury's verdict if any reasonable construction of the evidence would have allowed the jury to find the defendant's guilt beyond a reasonable doubt. *Id.*

The false statement at issue is Youte's statement to the customs officials in his cabin that he was not transporting more than $10,000. Section 1001 of Title 18 makes it unlawful to "knowingly and willfully . . . make[] any materially false, fictitious, or fraudulent statement or representation" in any matter within the jurisdiction of the federal government. 18 U.S.C. § 1001(a)(2). In order to obtain a conviction under § 1001, the government must establish "(1) that a statement was

8

made; (2) that it was false; (3) that it was material; (4) that it was made with specific intent; and (5) that it was within the jurisdiction of an agency of the United States." *United States v. Clay*, 832 F.3d 1259, 1305 (11th Cir. 2016) (quoting *United States v. House*, 684 F.3d 1173, 1203 (11th Cir. 2012)). The fourth element—the only one Youte disputes—can be satisfied by circumstantial evidence from which a reasonable jury can infer that the defendant acted knowingly and willfully. *Id.* at 1309.

We find that the jury could have reasonably inferred from the totality of the evidence that Youte knowingly and willfully lied about transporting more than $10,000.[5] First, Rodriguez specifically asked him if he had more than $10,000, and he said no. Then, Youte failed to mention the Tide box as he was piecemeal disclosing the money in his cabin—but in his later interview, he admitted that he knew the box contained money. A reasonable jury could infer from this evasive and inconsistent behavior that Youte must have known the box contained more than $10,000 or else he would have been candid about its existence. The district court did not err in denying Youte's motion for a judgment of acquittal.

**AFFIRMED.**

---

[5] Although the district court entered a judgment of acquittal on the bulk cash smuggling count, for which specific knowledge of the currency reporting requirement was an element the government failed to prove, no knowledge of any such requirement is needed in order to lie about transporting $10,000.

9